IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY PITT & ASSOCIATES,<br><br>  Plaintiff,<br><br>v.<br><br>LUNDY LAW, LLP, and L. LEONARD LUNDY,<br><br>  Defendants. | Civil Action No. ____<br><br>JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

Plaintiff Larry Pitt & Associates ("Pitt Law"), by and through its undersigned attorneys, brings the following claims against Defendants Lundy Law, LLP and L. Leonard Lundy (collectively "Defendant Lundy").

### NATURE OF THE CASE

1. This is an action for unfair competition under Pennsylvania common law, tortious interference with prospective economic advantage, and violations of the Sherman Antitrust Act, 15 U.S.C. §§1 and 2.

2. This action seeks actual and punitive damages, as well as injunctive relief and disgorgement of profits.

3. As set forth below, this action arises out of the orchestrated campaign of Defendant L. Leonard Lundy and Defendant Lundy Law, LLP to make Defendant Lundy Law the dominant law firm providing legal representation in the area of personal injury, social security disability, and workers' compensation law in the Greater Philadelphia area. Defendants have endeavored to

achieve this goal by attempting to monopolize and monopolizing the market for advertising of legal services using a panoply of predatory conduct aimed at injuring Plaintiff Pitt Law and other similar competitors. This predatory conduct has included entering into exclusive and restrictive contracts for legal advertising with co-conspiring media outlets that prevent the essential advertisement of legal services by Plaintiff Pitt Law and others in premium and highly coveted media outlets in the Greater Philadelphia area. This predatory conduct has also included Defendant Lundy filing meritless intellectual property claims and seeking injunctive relief against Pitt Law in this Court. The baselessness of those claims was affirmed when Defendant Lundy inexplicably withdrew the claims recently, but only after Pitt Law had incurred substantial expense in defense thereof.

## JURISDICTION AND VENUE

4. The amount in controversy exclusive of interest and costs exceeds the sum or value of $75,000.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, in that the claims arise under the Sherman Antitrust Act, 15 U.S.C. §§1 and 2. This Court has jurisdiction over the state claims which arise under the laws of Pennsylvania, pursuant to the principles of supplemental jurisdiction set forth in 28 U.S.C. §1367.

6. Venue is proper in this district under 28 U.S.C. §1391(b), as all Defendants reside in this district and all events or omissions giving rise to these claims occurred in this district.

7. This Court has personal jurisdiction over Defendant L. Leonard Lundy, as he is located in and conducts business in this district.

2

## THE PARTIES

8. Plaintiff Larry Pitt & Associates is a Pennsylvania professional corporation having its principal place of business at 1918 Pine Street, Philadelphia, Pennsylvania, 19103.

9. Defendant Lundy Law, LLP is a Pennsylvania limited liability partnership having a principal place of business at 1635 Market Street, 19th Floor, Philadelphia, Pennsylvania, 19103.

10. Defendant L. Leonard Lundy is a principal with Lundy Law and its Managing Partner, and resides in this district.

## THE RELEVANT MARKETS

11. For purposes of each of Plaintiff Pitt Law's antitrust claims herein, the relevant line of commerce in which to assess the competitive effects of the Defendant Lundy's wrongful conduct is the market for advertising of legal services by small personal injury, social security disability and workers' compensation law firms.

12. Defendant Lundy has stated that Plaintiff Pitt Law and Lundy Law compete for the same advertising "in connection with services customary in the legal services [market] including, and specifically the identical area of personal injury legal services advertised for and offered by . . . Lundy Law."

13. Based on information and belief, advertisers of other goods or services do not constrain the prices charged for the advertising of legal services by small personal injury, social security disability and workers' compensation law firms.

14. The relevant geographic market in which to assess the competitive effects of Defendant Lundy's wrongful conduct in the market for advertising of legal services is Berks, Bucks, Delaware, Chester, Montgomery and Philadelphia Counties ("Greater Philadelphia Region").

## FACTS GIVING RISE TO THESE CLAIMS

15. Pitt Law is a Pennsylvania law firm concentrating in personal injury, social security disability and workers' compensation law providing legal representation in the Greater Philadelphia Region.

16. Lundy Law is a Pennsylvania law firm concentrating in personal injury, social security disability and workers' compensation law providing legal representation in the Greater Philadelphia Region.

17. Defendant Lundy has stated that Pitt Law "is in direct competition with . . . Lundy Law in the same geographic area for the same legal services."

### Legal Advertising

18. It is a common practice for small personal injury, social security disability and workers' compensation law firms of this nature, like Lundy Law and Pitt Law, to advertise their legal services in order to effectively compete.

19. The purpose of such advertising for law firms of this type is to obtain name recognition among potential clients and other referral sources.

20. Such advertising is done in the following types of media: public transportation; radio; television; billboards; and in and around sporting events and concert venues.

21. Southeastern Pennsylvania Transportation Authority ("SEPTA") is a metropolitan transportation authority that operates various forms of public transit, including trains and buses, that serve 3.9 million people in the Greater Philadelphia Region. Average weekday ridership across the SEPTA system is over 1 million passengers.

22. Historically, Pitt Law and other small personal injury, social security disability and workers' compensation law firms have advertised their legal services with SEPTA, including on

the exterior of buses, interior of buses and at bus stops. This practice has taken place for at least ten years until recently, for reasons explained herein.

23. Advertising on the exterior of buses is one of the most effective forms of advertising for legal services for small personal injury, social security disability and workers' compensation law firms to use in order to achieve name recognition.

24. Buses serve as unique moving billboards, enabling maximum viewership or demographics for the advertisement.

25. The exteriors of buses are viewed by individuals driving in their cars or walking on the streets who may not ride buses and thus are not exposed to advertising on the interior of buses.

26. The exteriors of buses are viewed by individuals who may not own a television or radio and thus are not exposed to advertising in those media.

27. The exteriors of buses are viewed by individuals who may not attend sporting or concert events and thus are not exposed to advertising in that media.

28. The exteriors of buses are viewed by individuals who may not see stationary billboards and thus are not exposed to advertising in that media.

29. SEPTA buses run on 170 bus routes throughout the Greater Philadelphia Region. As a result, this premium advertising space is essential for such law firms to effectively compete in the relevant market.

30. Accordingly, as has been stated by Titan, the national advertising agency that has the exclusive right to sell advertisements on behalf of SEPTA, "exterior bus advertising is the ultimate mass-reach medium." Titan has further stated that nationally, "over 2.4 million individuals see a Titan bus ad every day" and "over 74 million individuals see a Titan bus ad every month" and "over 880 million individuals see a Titan bus ad every year."

31. Berks Area Regional Transportation ("BARTA") is a transportation authority that provides bus and shuttle service in Berks County, Pennsylvania, with its primary services in the city of Reading, Pennsylvania. There are approximately 2.6 million riders per year on BARTA buses.

32. Historically, Plaintiff Pitt Law has advertised its legal services with BARTA, including on the exterior and interior of buses.

33. Historically, Plaintiff Pitt Law has also advertised on radio and television spots during and around sporting events. These are the most influential and sought after advertising spots in this media outlet.

34. Plaintiff Pitt Law has also advertised on roadside billboards, which have limited effectiveness because they are only viewed by passing motorists at a particular location where billboards are permitted.

35. Because advertisements in these forms of media often grow stale if they are run continuously, it is common practice to run such advertisements for several months, stop the advertisements, and then re-start the advertisements to avoid such oversaturation. This method achieves the highest level of effectiveness for this type of premium advertising.

<u>Defendant Lundy's Exclusive Advertising Contracts</u>

36. During at least the past year, Defendant Lundy has commenced a predatory advertising campaign of entering into exclusive contracts for advertising in these same forms of select premium media locations and spots, including with SEPTA and BARTA for the exterior of buses and at sports and concert arenas, like the Wells Fargo Center in Philadelphia and during the prime "rush hour" on KYW Newsradio.

37. On information and belief, many of Lundy's contracts for advertising in these media forms are exclusive, thereby preventing any and all other legal service providers, including Pitt Law, from advertising in these outlets or using that method of media entirely.

38. On information and belief, Lundy's exclusive advertising contracts are for a period of at least one year, with automatic, unlimited renewal for additional one year periods. Because there is no limit on the renewal provision, Lundy's exclusive advertising contracts have the potential to exist for eternity.

39. On information and belief, Lundy Law has entered into other contracts for advertising that have restrictive provisions, preventing any and all other legal service providers from advertising during appropriate and optimal times.

40. Plaintiff Pitt Law attempted to renew its own advertising contracts and was foreclosed as a direct result of Defendant Lundy's anticompetitive conduct.

41. Specifically, when Plaintiff Pitt Law attempted to renew its contract for the highly coveted advertisements on the exterior of SEPTA buses, it was informed that Defendant Lundy's advertising contract with SEPTA prevented SEPTA from contracting with any other legal service providers for advertising anywhere on the exterior of buses, for at least one year, with unlimited one year renewal options.

42. Similarly, when Plaintiff Pitt Law recently attempted to renew its contract for the highly coveted advertisements on the exterior of BARTA buses in Berks County, Pennsylvania, Pitt Law was informed that Lundy's advertising contract with BARTA prevented BARTA from contracting with any other legal service providers for advertising anywhere on the exterior of buses, for at least one year, with unlimited one year renewal options.

43. Moreover, when Plaintiff Pitt Law attempted to secure advertising with Comcast SportsNet for advertising during games, Pitt Law was informed that Defendant Lundy's advertising contract with Comcast SportsNet prevented it from contracting with any other legal service providers for advertising during game time, for at least one year, with unlimited one year renewal options.

44. In addition, when Plaintiff Pitt Law attempted to secure advertising with KYW Newsradio for advertising around highly desirable traffic and weather spots, time checks and traffic sponsorships, Pitt Law was informed that Lundy's advertising contract with KYW Newsradio prevented KYW Newsradio from contracting with any other legal service providers for any and all of those premium time slots, for at least one year, with unlimited one year renewal options.

45. Finally, when Plaintiff Pitt Law attempted to secure advertising with the Wells Fargo Center, it was informed that Lundy's advertising contract with the Wells Fargo Center prevented the Wells Fargo Center from contracting with any other legal service providers for any form of advertising in any location within the massive arena, for at least one year, with unlimited one year renewal options.

46. On information and belief, L. Leonard Lundy has been personally involved in negotiating the exclusive advertising contracts in question and authorized their execution on behalf of Lundy Law.

47. Access to these media outlets and their premium advertising is an essential facility needed to effectively compete in the market for the advertising of legal services by such small personal injury, social security disability and workers' compensation law firms in the relevant geographic market.

48. Defendant Lundy Law has represented that since May 2011 it has been the "predominant advertiser of personal injury services."

49. Defendant Lundy Law has also stated that, "Lundy Law has been almost continually the most prominent largest legal advertisers in Southeastern Pennsylvania, Southern New Jersey and Delaware for years and, thus, one of the best known firms in the tri-state area."

50. For at least the past year, Defendant Lundy has engaged in a predatory campaign to eliminate competition from Pitt Law and other small personal injury, social security disability and workers' compensation law firms and to harm Pitt Law as a direct competitor. Defendant Lundy's predatory campaign has included the attempted monopolization and monopolization of advertising of legal services in personal injury, social security disability and workers' compensation law in the Greater Philadelphia Region. Defendant Lundy's unlawful conduct has, in fact, caused harm to Pitt Law and has significantly impacted competition in the advertising of legal services for small personal injury, social security disability and workers' compensation law firms in the relevant geographic market. As L. Leonard Lundy has publicly vowed, "I believe that, at the end of the day, the dominant brands will succeed."

51. On information and belief, L. Leonard Lundy has been personally involved in developing and approving Lundy Law's advertising and marketing strategies, including masterminding Lundy's predatory campaign to monopolize and to attempt to monopolize the market in advertising of legal services. This campaign is intended to eliminate and/or minimize the competitive threat posed by Pitt Law and other similar law firms.

52. On information and belief, Defendant Lundy makes large, economically unjustified payments to media outlets that are above market prices to induce them to enter into these predatory exclusive contracts.

53. On information and belief, Defendant Lundy Law and Defendant L. Leonard Lundy have instigated and spearheaded a boycott by media outlets of Pitt Law. Certain media outlets, at the urging and with the participation of Defendant Lundy, have combined and conspired to deal only with Lundy and not to deal with Pitt Law or any other similar law firm for certain forms of highly sought after premium advertising of legal services.

54. On information and belief, certain media outlets have agreed and conspired to assist Defendant Lundy in its efforts to exclude Pitt Law from the advertising of legal services in the premium methods of advertising described above. This has been accomplished by encouraging and accepting unusually high and economically unjustified payments that are above market prices in return for agreeing to deal only with Defendant Lundy.

### Other Predatory Conduct

55. Defendant Lundy, in conspiracy with others, has also engaged in further forms of predatory conduct to eliminate or undermine Pitt Law's advertising and otherwise competitively harm Pitt Law and similar law firms, including, on information and belief, employing other forms of illegal, fraudulent and unethical conduct.

56. This conduct has included, but is not limited to, threatening and filing litigation with no good-faith basis in law and fact against Pitt Law for anticompetitive purposes. Specifically, in January 2013, Defendant Lundy sent a letter to Pitt Law alleging that Pitt Law's use in advertising of the phrase "REMEMBER THIS NUMBER" infringed on a trademark allegedly owned by Lundy on the phrase "REMEMBER THIS NAME," and demanding that Pitt Law cease and desist in its use of the phrase "REMEMBER THIS NUMBER."

57. On March 4, 2013, Defendant Lundy filed a baseless lawsuit against Pitt Law in this Court in a case titled *Lundy Law, LLP v. Larry Pitt & Associates*, Case 2:13-cv-01161-JHS

(E.D.Pa.) (the "Trademark Lawsuit"), alleging various theories of trademark infringement and unfair competition related to Pitt Law's use in its advertising of the descriptive and instructional phrase "REMEMBER THIS NUMBER" and claiming that Pitt Law's trademark infringement was causing "damage to Lundy Law's reputation and goodwill" such that it would suffer irreparable harm if an injunction was not timely granted. Defendant L. Leonard Lundy authorized the initiation and continuation of that baseless lawsuit against Pitt Law and verified under oath the Complaint filed therein.

58. Plaintiff Pitt Law had used the phrase "REMEMBER THIS NUMBER" in its advertising for almost a year, without any objection from Defendant Lundy, before Defendant Lundy filed the Trademark Lawsuit.

59. Defendant Lundy only began using the phrase "REMEMBER THIS NAME," which is not a registered trademark, in 2011.

60. Defendant Lundy used the phrase only as part of a larger slogan: "INJURED? REMEMBER THIS NAME. LUNDY LAW."

61. At the time when the Trademark Lawsuit was filed, Defendant Lundy had changed its advertising, and did not even appear to be using the phrase "REMEMBER THIS NAME" in some or all of its advertisements.

62. The two common, ordinary, and generic phrases "REMEMBER THIS NAME" and "REMEMBER THIS NUMBER" were facially distinguishable from one another, unlikely to confuse consumers, and neither phrase, standing alone, identified the source of the services being offered.

63. Defendant Lundy never presented a single shred of evidence in its case to support its allegation that including in its advertisements an instruction to "REMEMBER THIS NAME"

had caused the phrase itself to acquire secondary meaning rendering it protectable under applicable trademark law. Nor did Defendant Lundy present any evidence of actual confusion on the part of consumers, despite the fact that the two phrases had been used concurrently in advertising for nearly a year before Defendant Lundy decided to file the Trademark Lawsuit.

64. On March 14, 2013, as a result of Defendant Lundy's initiation of the Trademark Lawsuit, an article titled "Pitt & Associates Sued by Lundy Law Over Firm Slogan" appeared in *The Legal Intelligencer*. The article, which was widely circulated, essentially parroted Lundy's portrayal of Pitt Law as a trademark infringer.

65. Extensive and costly briefing on Defendant Lundy Law's motion for preliminary injunction was also undertaken and the Court scheduled a hearing on the motion for the end of June, 2013 after oral depositions were to be taken.

66. On March 22, 2013, the parties served written discovery requests on each other, the responses to which were due by April 25, 2013.

67. On April 18, 2013, Manny Pokitolow, counsel representing Lundy Law in the Trademark Lawsuit, asked counsel for Pitt Law, Jackie Lesser, whether the fees and costs Pitt Law would incur in defending the Trademark Lawsuit would be paid by Pitt Law itself or by an insurance carrier. Counsel for Pitt Law responded that insurance coverage was available.

68. That same day, a few hours later, without explanation or any advance notice and after claiming under oath that Pitt Law was causing it "immediate and irreparable injury," Lundy Law voluntarily dismissed its Trademark Lawsuit against Pitt Law. The case has been subsequently marked closed by the Court.

### Anticompetitive Harm

69. Defendant Lundy has used such baseless litigation, as well as long-term exclusive contracts, a media boycott and other wrongful, predatory conduct, to acquire and maintain monopoly power and to attempt to monopolize and unreasonably restrain trade in providing advertising for legal services by small personal injury, social security disability and workers' compensation law firms in the Greater Philadelphia Region.

70. Through its illegal exclusive dealing agreements, boycott and other wrongful, predatory conduct, Defendant Lundy has substantially foreclosed Pitt Law from advertising for legal services in the relevant markets.

71. As a further result of the illegal acts of Defendants, Pitt Law has been severely damaged through lost sales and profits, higher costs and loss of goodwill and name recognition in the relevant markets.

72. The relevant markets are, and at all relevant times have been, highly concentrated. Defendant Lundy dominates these markets. There are no viable alternatives for such premium advertising, as described above.

### COUNT ONE

### SHERMAN ANTITRUST ACT SECTION 2 – UNLAWFUL MONOPOLIZATION
### (15 U.S.C. § 2)

73. Plaintiff Pitt re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 72 of this Complaint.

74. Defendant Lundy's monopoly position in the advertising of legal services for small personal injury, social security disability and workers' compensation law firms in the relevant geographic market has been acquired and maintained through exclusionary, predatory and other unjustified illegal and unethical business conduct, as opposed to a superior product, business

acumen, or historic accident.

75. As a direct and proximate result of Defendant Lundy's unlawful conduct as described above, Pitt Law has been injured in its business and property in an amount to be proven at trial.

76. Defendant Lundy's unlawful activity has directly injured Pitt Law by harming Pitt Law as a competitor, and by obstructing and impeding Pitt Law's ability to offer competing services in essential media outlets in the relevant market that has been affected by Defendant Lundy's unlawful conduct, thereby diminishing Pitt Law's profits and value as an enterprise.

## COUNT TWO

### SHERMAN ANTITRUST ACT SECTION 2 – ATTEMPTED MONOPOLIZATION
### (15 U.S.C. § 2)

77. Plaintiff Pitt Law re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 76 of this Complaint.

78. Defendant Lundy has acquired and sold the relevant product in interstate commerce and has engaged in the exclusionary and predatory conduct described herein through interstate channels in an attempt to monopolize the relevant markets described herein.

79. Defendant Lundy's exclusionary and predatory conduct, as described above, has been undertaken with the specific intent to create a monopoly in each of the relevant markets.

80. As a direct and proximate result of Defendant Lundy's unlawful conduct, Pitt Law has been injured in its business and property in an amount to be proven at trial.

81. Defendant Lundy's unlawful activity has directly injured Pitt Law by harming Pitt Law as a competitor, and by obstructing and impeding Pitt Law's ability to offer competing services in essential media outlets in the relevant market that has been affected by Defendant's unlawful conduct, thereby diminishing Pitt Law's profits and value as an enterprise.

## COUNT THREE

### SHERMAN ANTITRUST ACT SECTION 1 – UNLAWFUL BOYCOTT
### (15 U.S.C. § 1)

82. Plaintiff Pitt Law re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 81 of this Complaint.

83. Defendant Lundy Law has a dominant position in the advertising of legal services by small personal injury, social security disability and workers' compensation law firms in the Greater Philadelphia Region.

84. Defendants Lundy Law and L. Leonard Lundy's boycott with others, as described above, has been undertaken with the purpose and intent of excluding Pitt Law from the advertising of legal services in essential media outlets.

85. As a direct and proximate result of Defendants Lundy Law and L. Leonard Lundy's unlawful boycott, Pitt Law has been injured in its business and property in an amount to be proven at trial. Defendants Lundy Law and L. Leonard Lundy's unlawful boycott has directly injured Pitt Law by harming Pitt Law as a competitor and by obstructing Pitt Law's ability to offer competing services in essential media outlets in the relevant markets that have been affected by the boycott, thereby diminishing Pitt Law's profits and value as an enterprise.

## COUNT FOUR

### SHERMAN ANTITRUST ACT SECTION 1 – UNLAWFUL EXCLUSIVE DEALING
### (15 U.S.C. § 1)

86. Plaintiff Pitt Law re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 85 of this Complaint.

87. Defendant Lundy's exclusive agreements with retailers have been for the provision of goods and services or other commodities (including advertising) for use, consumption, or resale within the United States.

88. The effect of each of Defendant Lundy's exclusive agreements with various media outlets and the effect of them in the aggregate is to substantially lessen competition in the relevant market.

89. As a direct and proximate result of Defendant Lundy Law and Defendant L. Leonard Lundy's unlawful conduct, Pitt Law has been injured in its business and property in an amount to be proven at trial.

90. Defendant's unlawful activities have directly injured Pitt Law by harming Pitt Law as a competitor and by obstructing Pitt Law's ability to offer competing services in media outlets in the relevant market that has been affected by Defendant's unlawful conduct, thereby diminishing Pitt Law's profits and value as an enterprise.

## COUNT FIVE

### PENNSYLVANIA COMMON LAW - UNFAIR COMPETITION

91. Plaintiff Pitt Law re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 90 of this Complaint.

92. Defendants Lundy Law and L. Leonard Lundy have, as described above, engaged in conduct, which is contrary to honest industrial and commercial practice, and thus, has engaged in unfair competition, in violation of the common law of the Commonwealth of Pennsylvania.

93. Defendant Lundy's acts are calculated to procure an unfair competitive advantage by misappropriating the commercial advantage of Plaintiff Pitt Law through Lundy Law's exclusive contracts, filing baseless litigation and other predatory and unfair conduct described herein.

94. Defendants Lundy Law and L. Leonard Lundy have engaged in the aforementioned acts willfully and deliberately and their conduct has caused injury to Plaintiff Pitt Law as well as to other similar law firms and the public.

95. As a result thereof, Plaintiff Pitt Law has been directly injured in an amount to be determined at trial, including, as an alternative, the disgorgement of profits illegally obtained by Defendant Lundy as a result of its unfair competitive conduct.

## COUNT SIX

### PENNSYLVANIA COMMON LAW – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT

96. Plaintiff Pitt Law re-alleges and incorporates as though fully set forth herein the allegations contained in paragraphs 1 through 95 of this Complaint.

97. Defendants Lundy Law and L. Leonard Lundy, through their exclusive and restrictive advertising contracts and other anticompetitive conduct, tortuously interfered with Pitt Law's prospective contracts with SEPTA, BARTA, KYW Newsradio and the Wells Fargo Center.

98. Plaintiff Pitt Law historically contracted with these media outlets and had a realistic anticipation of being able to renew those contracts, which was more than a mere hope.

99. Defendants Lundy Law and L. Leonard Lundy entered into exclusive and restrictive advertising contracts with these media outlets with the purpose and intent of harming Plaintiff Pitt Law.

100. There is no privilege or justification for Defendant Lundy's actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Pitt Law respectfully prays that:

101. The Court enter judgment that:

    a. Defendants have violated the Sherman Antitrust Act §§ 1 and 2;

    b. Defendants have engaged in unfair competition at common law; and

    c. Defendants have engaged in tortious interference with prospective contract.

102. This Court award monetary damages sustained by Plaintiff Pitt Law from Defendants, joint and severably, as a result of injury due to Defendants' violations of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2) in amounts to be ascertained at trial, such amounts to be trebled pursuant to Section 4 of the Clayton Act, (15 U.S.C. § 15).

103. Defendants be required, in the alternative, to account for and pay to Plaintiff Pitt Law all profits realized by Defendants as a result of the illegal acts complained of herein, pursuant to Pennsylvania common law.

104. This Court award to Plaintiff Pitt Law recovery of the costs of this suit, including its reasonable attorneys' fees and costs incurred herein and in connection with the prior baseless lawsuit filed by Defendant Lundy against it, referenced herein.

105. This Court award punitive and exemplary damages to Plaintiff Pitt Law based on Defendants' conduct.

106. This Court enter an injunction enjoining Defendants' illegal conduct.

107. This Court award such other, different and further relief as the Court may deem just, equitable and proper.

          **DLA Piper LLP (US)**

By: *[signature: Carl W. Hittinger]*
Carl W. Hittinger (Bar No. 30250)
Lesli C. Esposito
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA
T: 215-656-2449
F: 215-606-2149
carl.hittinger@dlapiper.com
lesli.esposito@dlapiper.com

Date: May 2, 2013

*Attorneys for Plaintiff*
*Larry Pitt & Associates*

## VERIFICATION

I, Larry Pitt, am authorized to make this Verification on behalf of Plaintiff Larry Pitt & Associates. I declare under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my personal knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 5/2/13

_____
Larry Pitt