IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY PITT & ASSOCIATES,<br>    Plaintiff, | : | |
|     v. | : | CIVIL ACTION NO. 13-2398 |
| LUNDY LAW, LLP, et al.<br>    Defendants. | : | |

MEMORANDUM OPINION

Rufe, J.                                                                                                                                                                                                                                                  December 13, 2013

       Plaintiff, a law firm, has sued a second law firm and its managing partner, alleging state and federal causes of action. Defendants[1] have moved to dismiss all claims. For the reasons set forth herein, the motion will be granted in part and denied in part.

I.     FACTS ALLEGED IN THE AMENDED COMPLAINT

       Plaintiff Pitt is a Pennsylvania-based law firm which provides representation to clients in greater Philadelphia area, including Philadelphia and its Pennsylvania, New Jersey, and Delaware suburbs. The firm provides representation primarily in the areas of "small personal injury, social security disability, and workers' compensation law."[2] Defendant Lundy Law is a Pennsylvania-based law firm serving the same region and advertising that it provides representation to individuals pursuing personal injury, social security disability, and workers' compensation claims. The two firms directly compete for clients, and for prime advertising opportunities used to attract clients.

       Consumers wishing to retain a lawyer in the areas of personal injury, social security disability, and workers' compensation select their lawyers based upon brand name or name

---

[1] Defendant L. Leonard Lundy is a principal and managing partner of Lundy Law. The Court will refer to both Defendants collectively as "Lundy Law" throughout.
[2] Am. Compl. ¶ 3.

recall.  Accordingly, effective advertising such that consumers become familiar with the name of a law firm is important to the business success of that firm.  Law firms such as Pitt and Lundy seek advertising opportunities which provide "[m]ass reach, constant messaging, [and] saturation,"[3] as such advertising creates name recognition.  According to Pitt, the most highly coveted advertising venues are: 1) the exterior of buses; 2) radio time slots just before and after traffic and weather updates; and 3) inside sports arenas.  Phonebooks, internet advertisements, roadside stationary billboards, and advertising posted inside buses and trains and at bus stops are all less effective.[4]

      Historically, Pitt purchased advertising space on the exteriors and interiors of Southeastern Pennsylvania Transportation Authority ("SEPTA") buses and trains, and on SEPTA bus stops.  SEPTA advertisements are sold by a national advertising agency called Titan.  Defendant L. Leonard Lundy's daughter, Sara Lundy, has been an Account Executive at Titan since March 2011, and is responsible for selling advertisements for SEPTA.  Since approximately January 2012, Lundy Law has had the exclusive right to advertise legal services on the outside of SEPTA buses, pursuant to one-year, renewable contracts with SEPTA.  In consideration for this exclusive right, Lundy Law paid a substantial advertising fee, above the market prices SEPTA typically charges for such advertising.  For the period of the contract, Pitt and other law firms[5] cannot advertise on the exterior of SEPTA buses, even if the advertising space is not being used by Lundy or any other business.  Pitt and other firms may purchase advertising space inside SEPTA buses and trains and on SEPTA bus stops.  Pitt alleges that Lundy's exclusive contract with SEPTA for exterior advertising is renewable indefinitely, but

---

[3] Am. Compl. ¶ 30.
[4] As Lundy notes, the Amended Complaint makes no mention of television advertising.
[5] The Amended Complaint describes failed attempts by non-party law firms Spear, Greenfield & Richman, P.C. and Hill & Associates, P.C. to purchase exterior ads on SEPTA buses in 2012 and 2013 (Am. Compl. ¶¶ 82-90, 91-98).

does not allege that the contract *requires* either party to renew at the end of each one year term.[6] Pitt has not alleged that it has been or will be denied the opportunity to make its own offer for an exclusive contract with SEPTA at the expiration of Lundy's one-year exclusive contract,[7] nor has it alleged that SEPTA has rejected higher offers for exclusive contracts in favor of Lundy Law.

Pitt notes that exterior bus advertisements are very effective, and are unique in that they serve as moving billboards, reaching more prospective clients than stationary billboards or interior bus and train advertisements. Pitt provides no data with regard to how many individuals in the greater Philadelphia area see interior versus exterior SEPTA ads each day, but does note that average weekday ridership on SEPTA-operated vehicles is over 1 million passengers, and overall ridership is 3.9 million passengers annually. Pitt received 142 client referrals from SEPTA advertisements (presumably including both interior and exterior advertisements) in 2008, 160 in 2009, 197 in 2010, and 146 in 2011, but only 16 in 2012 and 12 in 2013 after it was barred from running advertisements on the exteriors of SEPTA buses.

In addition to the SEPTA contract, Lundy has entered into a one-year exclusive contract to advertise on the exterior of Berks Area Regional Transportation Authority ("BARTA") buses. The BARTA system serves 3.1 million riders annually in and around Reading, Pennsylvania. In the past, Pitt has advertised on the KYW radio station during rush hour, but now Lundy has an exclusive contract for rush hour advertising slots scheduled around weather and traffic updates on KYW, precluding other law firms from buying advertising in those desirable time slots on that station for at least one year.[8] Finally, Lundy has an exclusive contract with the Wells Fargo

---

[6] *See* Am. Compl. ¶ 96 ("[Pitt] may later be able to secure advertising on the exteriors of buses if and when Defendant Lundy's agreement expires and Defendant Lundy decides not to renew it.")
[7] Pitt alleges that because other types of advertisements are not viable substitutes, it and similar law firms would compete vigorously and be willing to pay higher prices for exterior bus advertising before turning to other, less effective forms of advertising. Am. Compl. ¶ 53.
[8] Pitt provides no data regarding the number of listeners in the region tuned to KYW, versus other commercial radio

Center sports and entertainment arena, which precludes advertising by competing law firms for at least one year. Lundy obtained all of these exclusive contracts by paying "unusually high" advertising fees, well above market rates.[9] These facts form the basis of Pitt's antitrust and unfair competition claims.

Pitt's false advertising claim is premised on the fact that Lundy Law advertises itself as a law firm representing clients in Social Security disability and workers' compensation cases, when in fact it refers such cases to other firms in exchange for a referral fee, and does not actually represent clients in such cases.

Finally, the Amended Complaint alleges that Lundy Law, which uses the phrase "Remember this Name" in its advertising, filed a meritless trademark infringement lawsuit against Pitt for Pitt's use of the phrase "Remember this Number" in its advertising. The suit was filed on March 4, 2013. The parties submitted briefs on Lundy Law's motion for a preliminary injunction and began discovery efforts. Then, on April 18, 2013, Lundy Law voluntarily dismissed the trademark infringement suit within hours of learning that Pitt's insurance carrier was covering the costs of litigation for Pitt. The Amended Complaint notes that "Remember this Name" is not a registered trademark.

As a result of these above described activities, Pitt has suffered a decrease in net income, whereas in the years before Lundy Law entered into the exclusive advertising contracts, Pitt had typically seen an increase in net income from year to year.

## II.   STANDARD OF REVIEW

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

---

stations serving the greater Philadelphia region, during the rush hour.
[9] Amended Complaint at ¶ 120.

statement" does not possess enough substance to show that plaintiff is entitled to relief.[10] In determining whether a motion to dismiss is appropriate the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[11] Courts are not bound to accept as true legal conclusions couched as factual allegations.[12] Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[13] Even in complex antitrust cases, courts must apply the plausibility standard and not a heightened standard.[14] The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[15] The court has no duty "to conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[16]

### III. DISCUSSION

#### A. Antitrust Claims

##### 1. Sherman Act, Section 2 Claims (Count I and II)

In Counts I and II, Pitt alleges that Lundy Law has violated Section 2 of the Sherman Act, which prohibits people or entities from monopolizing or attempting to monopolize trade.[17] A party can violate Section 2 through unilateral conduct which creates or attempts to create a monopoly, or by harmfully exercising monopoly power.[18] To state a claim under Section 2, a

---

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[11] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).
[12] *Twombly,* 550 U.S. at 555.
[13] *Id.* at 570.
[14] *West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir. 2010) (holding that it is inappropriate to apply heightened scrutiny to antitrust and other complex cases).
[15] *Twombly,* 550 U.S. at 562.
[16] *Id.* (citing *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n.3 (1st Cir. 1976)).
[17] 15 U.S.C. § 2.
[18] The Amended Complaint does not allege the exercise of monopoly power.

plaintiff must demonstrate "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[19] To demonstrate that a dangerous probability of achieving monopoly power exists, a plaintiff must define the relevant geographic market and product market, and explain defendant's power within that market.[20] "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."[21]

Pitt argues that it is a direct competitor of Lundy Law and that Lundy Law has engaged in an anti-competitive scheme in restraint of trade, causing injury to Pitt by monopolizing or attempting to monopolize two markets in the greater Philadelphia region: the market for legal services providers primarily representing clients in small personal injury, Social Security disability, and workers' compensation cases; and the market for "mass reach, constant messaging, saturation advertising for [such] legal services."[22] It is alleged that Lundy Law and Pitt compete with each other, and with other firms and businesses, in both product markets. Lundy Law challenges the adequacy of the pleadings as to both the geographic and the product market definitions proposed by Pitt.

The Court finds that Pitt has adequately defined the proposed geographic market at this stage in the litigation. While on a complete factual record Lundy Law might mount a challenge to the proposed geographic market, the Court finds that Pitt's geographic market definition is

---

[19] *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).
[20] *Id.*
[21] *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).
[22] Doc. No. 22 at 11.

adequately supported for notice and pleading purposes.

The Court will assume, for purposes of this motion, that Pitt has sufficiently defined the first of its proposed product market definitions—the legal market consisting of law firms focused on small personal injury, Social Security disability, and workers' compensation claims.[23] However, the Court finds that Pitt has failed to allege sufficiently that Lundy Law has engaged in predatory or anticompetitive conduct with a specific intent to monopolize that legal market. Although Lundy Law may well wish to dominate that legal market, it has not been adequately pled that Lundy Law has engaged in predatory or anticompetitive conduct to achieve that goal.[24] The goal of all advertising is to increase market share, and the fact that advertising is effective does not render its use anticompetitive or predatory. In fact, in seeking exclusive advertising opportunities, it appears that Lundy Law is responding to competition in the legal market. Pitt has alleged no facts, beyond Lundy Law's acquisition of discrete, albeit highly effective, advertising opportunities, in support of its claim that Lundy Law has engaged in predatory or anticompetitive conduct.

Additionally, Pitt has failed to allege facts demonstrating that Lundy Law dominates or is in danger of monopolizing this legal market. Pitt has not alleged facts to support its assertions that Lundy Law's clients may be charged higher prices because of Lundy Law's superior market power,[25] that Lundy Law's practices have limited consumer choice, or that Lundy Law's

---

[23] *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (in determining whether competing entities are in the same market, the Court must examine whether products or services are readily substituted for one another).

[24] Under § 2 of the Sherman Act, an increase in market share, even to the level of monopoly power, is only suspect if achieved by improper means, rather than as a consequence of a superior product or savvy business dealings. *Queen City Pizza*, 124 F.3d at 437.

[25] Pitt admits that Lundy Law has not raised its fees above market levels, but argues that it could potentially do so. However, while Pitt's factual allegations support its claim that Lundy Law's superior name recognition may lead potential clients to call Lundy Law first, they are not sufficient to support a claim that Lundy Law has the market power to raise fees above those typically charged for equivalent services without losing clients to lower-priced competitors.

practices have created barriers to entry in the relevant market.[26] While Pitt alleges that it has received fewer workers' compensation cases since losing the opportunity to advertise on the exterior of SEPTA buses, this allegation only demonstrates an injury to Pitt, and not to consumer choice or to competition for clients. As antitrust laws protect competition, not competitors, these allegations are insufficient.[27]

Pitt also asserts that Lundy Law has illegally monopolized or attempted to monopolize the market for "mass reach, constant messaging, saturation advertising for legal services." However, this proposed product market definition is not sufficiently pled. Law firms are not the only entities competing for "mass reach, constant messaging, saturation advertising" opportunities in the greater Philadelphia region, and the Court sees no rationale for including the qualifier "for legal services" in defining the proposed advertising market. From the perspective of an entity selling advertising space, law firms and non-legal purchasers of advertising space are readily substituted for one another. Furthermore, the Court cannot infer from the facts alleged that the four advertising opportunities currently dominated by Lundy Law pursuant to exclusive contracts constitute the entirety of the market for "mass reach, constant messaging, saturation advertising for legal services." While the Court accepts, for the purposes of this motion, the allegation that the four advertising opportunities at issue have proven to be unusually effective, it is not persuaded that they alone constitute a *market*, in light of the universe of regional venues for similar advertising, including other radio stations, sports stadiums, and transit systems serving the greater Philadelphia region, as well as billboards, taxi cab advertising, advertising

---

[26] Pitt quotes *Broadcom*: "Barriers to entry are factors . . . that prevent new competition from entering a market in response to a monopolist's supracompetitive prices," but has admitted that Lundy Law does not currently charge supracompetitive prices and does not allege any facts from which the Court can conclude that there would be significant barriers to new competitors entering the legal market if Lundy Law did, given the wide array of possible advertising opportunities in the geographic region which have not entered into exclusive contracts with Lundy Law, and the fact that Pitt has alleged that consumers of the type of legal services it provides do not chose law firms based on entrenched brand preferences or law firm reputations, but rather on name recognition. *See Broadcom*, 501 F.3d at 307.

[27] *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

space inside buses and trains and at bus stops, television, internet, and newspaper advertising. Lundy Law clearly does not control all avenues for advertising in the greater Philadelphia region, and, additionally, it is not clear from the complaint that Pitt has been or will be foreclosed from bidding for the very contracts from which Lundy Law now benefits, at the end of the contract terms.

Moreover, exclusive dealing contracts are unlawful only if the probable effect is to lessen competition in the relevant market.[28] Even if the Court accepted that four advertising opportunities constituted a market, Pitt cannot allege that Lundy Law's exclusive contracts have damaged competition in that market because those contracts have not precluded non-legal entities from competing for advertising opportunities with the relevant entities. While *Pitt* is not able to compete for advertising space in the four venues at issue during Lundy Law's exclusive contract term, companies advertising other products and services may. Therefore, even taking the facts alleged as true, the Court cannot find that competition is harmed by these exclusive dealing contracts.[29]

Finally, Pitt argues that Lundy Law filed a frivolous trademark lawsuit against Pitt motivated by an anticompetitive purpose, and dismissed that case two months after it was filed once Lundy Law learned that Pitt's defense costs were covered by insurance. Even accepting as true, for the purpose of this analysis, the allegation that this suit was baseless and filed only to cause financial injury to Pitt, Pitt has not alleged any facts from which the Court can find that the suit was intended to cause an injury to *competition* in the relevant markets, nor has it alleged a dangerous probability of achieving monopoly power.

    2. <u>Sherman Act, Section 1 Claims (Counts III and IV )</u>

---

[28] *ZFMeritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (2012).

[29] The fact that the entities charged Lundy Law a premium, well above typical market rates, for exclusive advertising contracts does not make those contracts anti-competitive. In fact, the premium Lundy Law paid for exclusive advertising contracts indicates that Lundy Law *lacks* the market power to drive down its cost of buying advertisements in the relevant markets. *Id.* at 270-71; *Queen City Pizza*, 124 F.3d at 438.

Section 1 of the Sherman act prohibits contracts, conspiracies, and combinations in restraint of trade.[30] A claim under Section 1 must allege collective action—i.e. an agreement between two or more actors.[31] A plaintiff must also plead: 1) concerted action by the parties to the agreement, acting with unity of purpose or common design to engage in unlawful behavior; 2) causing anti-competitive effects within the relevant product and geographic markets; and 3) causing injury to the plaintiff.[32]

In Count IV, Pitt alleges unlawful exclusive dealing in violation of the Sherman Act. Pitt argues that the aggregate effect of the four exclusive dealing contracts Lundy Law has entered into is to lessen competition in the legal marketplace. However, Pitt fails to allege that Lundy Law and the entities with which Lundy Law has an exclusive advertising contract acted "with unity of purpose" to "engage in unlawful" anticompetitive behavior. While Lundy Law clearly acted with the intent of excluding competitors from specific advertising opportunities during exclusive contract periods, it is alleged that they paid well above market rates for exclusive advertising rights in these venues, suggesting that the entities with which they contracted acted out of economic self-interest and not with an anticompetitive purpose.

With regard to SEPTA, Plaintiff alleges that Leonard Lundy's daughter, Sara Lundy, was the Account Executive at Titan who arranged the exclusive advertising deal between SEPTA and Lundy Law, and Pitts asks the Court to infer that that Sara Lundy shared with Lundy Law the goal of engaging in unlawful, anticompetitive behavior. However, even if an employee of Titan wanted to benefit Lundy Law, it would be unfair to infer that Titan or SEPTA had illegal motives, as opposed to legitimate economic motives, when the three other entities, which are not alleged to employ Lundy family members, agreed to enter into similar business deals with Lundy

---

[30] 15 U.S.C. § 1.
[31] *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 639 (3d Cir. 1996).
[32] *Id.*

Law.[33]

In addition, Pitt has not argued that any one of the exclusive contracts would have created an anticompetitive effect, but only that the aggregate effect of the four exclusive contracts is anticompetitive or constituted an illegal boycott. Therefore, the Amended Complaint must set forth facts which demonstrate the existence of a horizontal conspiracy (i.e. collusion among the sellers of advertising), not just four vertical conspiracies (i.e. collusion between Lundy Law and each seller of advertising).[34] However, Pitt has failed to allege any facts from which the Court can infer that the four entities with which Lundy Law exclusively contracted colluded with each other, as well as with Lundy Law, with the object of restraining competition for advertising space. In fact, Pitt has not even alleged that any of the four entities were aware of Lundy Law's exclusive contracts with the others. Moreover, Pitt asserts no rational motive for the non-party entities to so collude or to participate in a "boycott." While charging a premium in exchange for exclusive rights to advertise legal services during a contract period makes economic sense, eliminating the buyer's competitors for future exclusive contracts would be economically irrational. The conduct of the relevant entities is consistent with permissible competition. Accordingly, Count III will be dismissed for failure to state a claim.

5. Lanham Act Claim (Count V)

The Lanham Act creates civil liability when a person is likely to be injured by a false or misleading statement made in advertising, when that statement is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person

---

[33] Moreover, as noted above, Plaintiff has not adequately defined an advertising market, and thus cannot demonstrate that Lundy Law's contract for SEPTA advertising causes an anti-competitive effect within that market.

[34] "Courts have refused to find a horizontal conspiracy, where a single entity or person engages in separate vertical conspiracies with multiple parties, who do not conspire amongst themselves horizontally." *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 562 (E.D. Pa. 2002). "A horizontal group boycott involves entities at the same level of the market structure conspiring amongst themselves, with a purpose either to exclude a person or group from the market, or to accomplish some other anti-competitive objective, or both." *Id.* at 561-62 (internal quotations omitted).

with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ."[35] To state a claim for false advertising under the Lanham Act, a plaintiff must allege: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc."[36] The second element is presumed if Plaintiff demonstrates that an advertisement is unambiguous and literally false.[37]

In Count V, Pitt argues that, in violation of Pennsylvania Rule of Professional Conduct 7.2, Lundy Law has falsely advertised that it represents clients with Social Security disability and workers' compensation claims, when in fact it refers such clients to other firms for representation in exchange for a referral fee, and that these deceptive statements are likely to influence the decision of potential clients to contact Lundy Law rather than one of its competitors. Assuming, for the purpose of this motion, that the allegations in the Amended Complaint are true and Lundy Law does not represent clients in Social Security disability and workers' compensation claims, the Court finds that the Complaint sufficiently alleges that Lundy Law's advertisements have a tendency to deceive or mislead a substantial portion of the intended audience, and may even be literally false.[38] Plaintiff has also sufficiently pled that advertising for the types of legal services at issue here does influence consumers' "purchasing" decisions, and therefore Lundy Law's advertisements may draw business which would otherwise go to Pitt or other firms, causing

---

[35] 15 U.S.C. § 1125(a)(1)(A).
[36] *Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).
[37] *Id.*
[38] *See Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 136 (3d Cir. 2005).

injury to Pitt. As this claim is better decided on a complete factual record, the Court will not dismiss this claim on the pleadings.

### B. **State Law Claims**[39]

#### 1. Unfair Competition (Count VI)

Lundy Law argues that Pitt's unfair competition claims asserted under state common law are co-extensive with and fail for the same reasons Plaintiff's antitrust claims fail. Pennsylvania follows the Restatement (Third) of Unfair Competition, which provides that one engaging in a business or trade can be liable for harm to the commercial relations of another only if the acts or practices are actionable under federal or state statutes *or* the acts or practices "substantially interfere[] with the ability of others to compete on the merits of their products."[40] Courts in this district have held that in order to assert a claim pursuant to Pennsylvania's common law prohibition against unfair competition, a plaintiff must set forth adequate allegations regarding relevant markets and market share.[41] Although Pitt argues otherwise, the Court finds that Pitt relies on the same deficient factual allegations to support both his antitrust claims and his state law unfair competition claims. As Pitt's antitrust claims fail, so too do his state law unfair competition claims.

#### 2. Tortious Interference Claim (Count VII)

Pitt alleges that Lundy Law tortuously interfered with Pitt's anticipated future advertising contracts with KYW, SEPTA, BARTA, and the Wells Fargo Center. To state a claim for tortious interference under Pennsylvania law, a plaintiff must plead: 1) the existence of a prospective contractual relationship between the plaintiff and a third party; and 2) purposeful

---

[39] Because one of Plaintiff's federal law claims survives, the Court has supplemental jurisdiction to hear Plaintiff's related state law claims.
[40] *Yeager's Fuel, Inc. v. Pa. Power & Light, Co.*, 953 F. Supp. 617, 668 (E.D. Pa. 1997).
[41] *See Fresh Made, Inc. v. Lifeway Foods, Inc.*, No. 01-4254, 2002 WL 3246922 at *9 (E.D. Pa. Aug. 9, 2002).

action by defendant to interfere with that prospective relationship; 3) without privilege or justification; 4) causing legal injury.[42]

Lundy Law argues that Pitt's tortious interference with contract is inadequately pled and fails to state a claim because Pitt has not alleged facts sufficient to show that Pitt had a prospective contractual relationship with the four entities. Furthermore, Lundy Law argues that it did not enter into exclusive contracts with those entities for the purpose of harming Pitt's business relationships, but rather for the purpose of enhancing its own visibility in a competitive industry. The Court agrees that Pitt has not adequately pled the elements of a tortious interference with contract claim, for the reasons Lundy Law raises. Pitt alleges only that it contracted for advertising space with the four entities in the past; it does not allege any facts from which the Court can infer that the parties had mutually anticipated entering into such agreements in the future. Moreover, exclusive contracts by their nature interfere with the ability of third parties to enter into contracts with the bound parties; this does not make exclusive contracts inherently tortious.

### 3. Dragonetti Claim (Count VII)

Pennsylvania's Dragonetti Act allows a civil suit for wrongful initiation of civil court proceedings without probable cause and for a purpose other than securing adjudication of a legal claim, when the proceedings end in favor of the defendant.[43]

Here, Lundy Law, which uses the unregistered slogan "Remember this Name" in advertising, sued Pitt when Pitt began using the slogan "Remember this Number" in its advertising. Lundy Law dismissed the lawsuit without prejudice two months after it was filed, after briefing on the Motion for Preliminary Injunction was complete, and allegedly the same day

---

[42] *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).
[43] 42 Pa. Cons. Stat. §§ 8351-8355.

it learned that Pitt's insurance company was covering the cost of the defense, without any rulings on the merits being made. Pitt now argues that the suit was filed without probable cause, not to resolve a legal dispute, but in an effort to negatively impact on its advertising and cause financial harm to Pitt.

Lundy Law argues that Pitt cannot state a Dragonetti claim because Pitt is unable to allege that the trademark suit brought by Lundy Law was terminated in Pitt's favor.[44] Lundy Law points out that the case was not voluntarily dismissed on the eve of trial or after a motion for summary judgment had been filed, in anticipation of imminent loss on the merits, but rather was dismissed without prejudice less than two months after it was filed.[45] However, the Court notes that a Motion for Preliminary Injunction was fully briefed and pending, and a hearing on that motion was scheduled at the time of the voluntary dismissal. The court's ruling on the motion would have included an assessment of the likelihood of success on the merits.[46]

At this stage of the proceedings, the Court finds that the Dragonetti claim is adequately pled. The Court will allow Pitt to conduct discovery on this claim, and will decide the question of whether voluntary dismissal at the motion for preliminary injunction stage can constitute termination in the defendant's favor upon a complete factual record.[47]

### 3. Abuse of Process (Count IX)

Pitt also argues that the trademark infringement lawsuit constituted violated the common law intentional tort of abuse of process, which does not require a showing that the underlying

---

[44] *Sports Int'l Ltd. v. Obermayer, Rebmann, Maxwell & Hippel*, No. 95-1331, 1996 WL 50632, *2-3 (E.D. Pa. Jan. 30, 1995).
[45] *Cf. Mistick v. Mistick,* No. 08-17689, 2011 WL 9106050 (Pa. Com. Pl., Nov. 17, 2011); *Bannar v. Miller,* 701 A.2d 242, 248 (Pa. Super. 1997).
[46] *Doe v. National Bd. of Med. Examiners*, 199 F.3d 146, 154 (3d Cir. 1999) (discussing standard for deciding motions for preliminary injunctions).
[47] *See Clausi v. Stuck*, 74 A.3d 242, 246 (Pa. Super. 2013) (when considering the question of whether a voluntary dismissal constitutes a favorable, final termination of a case, the court must consider the factual circumstances under which the proceedings are withdrawn.).

litigation was terminated in its favor. An abuse of process claim must allege: 1) an abuse or perversion of process in a case already initiated; 2) primarily to achieve an unlawful or ulterior purpose; 3) causing harm to the other party.[48] In other words, abuse of process is the use of civil litigation as a tactical weapon to accomplish a purpose other than legitimate object of the litigation.[49] "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."[50]

Plaintiff alleges that the suit was filed in order to drain Pitt's financial resources, an improper purpose.[51] However, unlike a Dragonetti claim, one cannot rest an abuse of process claim on an allegation that the suit was *initiated* for an improper purpose.[52] It has not been alleged that Lundy Law took any steps to inflate the cost of defending this suit beyond what was required to address the merits of the claims,[53] nor was any other perversion of process alleged. Finally, Pitt has not alleged an injury, as its costs in the litigation were covered by their insurance carrier, and it has not alleged any other harm.

## IV. CONCLUSION

For the reasons set forth herein, Counts I, II, III, IV, VI, VII, and IX are dismissed without prejudice, and Plaintiff may proceed with Counts V and VIII.

---

[48] *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. 1984); *Tomalonis v. Levant*, No. 731-EDA-2004, 2005 WL 1677555, at *2 (Pa. Super. May 10, 2005).
[49] *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003); *Tomalonis*, 2005 WL 1677555, at *2.
[50] *Tomalonis,* 2005 WL 1677555, at *3.
[51] Pitt also argues that Lundy Law perverted legal process in order to "eliminate or undermine [Pitt's] advertising." Am. Compl. ¶ 121. However, this goal is consistent with the express purpose of Lundy Law's trademark litigation over Pitt's use of the slogan "Remember this Number" in its advertising.
[52] *Koresko v. Crosswhite*, No. 05-4817, 2006 WL 263623, at *7 (E.D. Pa. Feb. 1, 2006) (noting that abuse of process is concerned with the perversion of a civil process after it has been issued, not with the bad motives which caused a litigant to file the lawsuit, and dismissing abuse of process claims that only alleged improper motive in filing lawsuit).
[53] Lundy Law's filing of a motion for preliminary injunction was consistent with the stated purpose of the suit: to put a stop to the alleged trademark infringement.