# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**LARRY PITT & ASSOCIATES,**          :
      **Plaintiff,**                  :
            v.                        :          **CIVIL ACTION NO. 13-2398**
                                      :
**LUNDY LAW, LLP, et al.**            :
      **Defendants.**                 :
_____ :

## MEMORANDUM OPINION

**Rufe, J.**                                         **September 30, 2014**

Plaintiff Larry Pitt & Associates ("Pitt"), a law firm, has sued a second law firm, Lundy

Law, LLP, and its managing partner L. Leonard Lundy, Esq. (collectively "Lundy Law"), as well

as Titan Outdoor LLC ("Titan"), an advertising firm, alleging federal antitrust violations and

state law causes of action. Plaintiff voluntarily dismissed its initial complaint after Defendants

filed a motion to dismiss, and filed an amended complaint. Defendants again moved to dismiss,

and the Court granted that motion in substantial part.[1] Plaintiff filed a Second Amended

Complaint. Defendants have moved to dismiss the Sherman Act claims (Counts 1-4) and certain

state law claims (Counts 6 and 7).

## I.      FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT[2]

Plaintiff Pitt is a Pennsylvania-based law firm, with its office in Philadelphia, which

provides representation to clients in the greater Philadelphia region. The firm provides

representation primarily in the areas of personal injury, social security disability, and workers'

---

[1] The Court found that two of Plaintiff's claims were adequately pled.  One of those claims alleged that Lundy Law was violating the Lanham Act, a federal claim, and the other alleged violations of Pennsylvania's Dragonetti Act. The Court dismissed all other claims, but granted leave to amend.

[2] The Second Amended Complaint ("SAC") restates facts contained in the First Amended Complaint ("FAC"), and also pleads some additional facts.  See Exh. A to Pl.'s Brief [Doc. No. 46-1], comparing the FAC and the SAC.  The Court hereby incorporates the recitation of facts set forth in the Court's December 13, 2013 memorandum opinion, but also summarizes the factual allegations from the SAC in this memorandum opinion to provide context for its opinion.

compensation law. Defendant Lundy Law is a Pennsylvania-based law firm with offices in Pennsylvania, New Jersey and Delaware. Lundy Law purports that it provides representation to individuals pursuing personal injury, social security disability, and workers' compensation claims.

It is alleged that potential clients who wish to retain a lawyer in the areas of personal injury, social security disability, and workers' compensation select their lawyers based upon brand name recognition or brand name recall. Accordingly, law firms such as Pitt and Lundy Law seek advertising opportunities which provide mass reach, constant messaging, and saturation, as such advertising creates name recognition and recall. According to Pitt, the most highly coveted advertising venues are: 1) the exterior of buses; 2) radio time slots just before and after traffic and weather updates; and 3) inside sports arenas. Television advertisements, phonebook listings, internet advertisements, roadside stationary billboards, and advertising posted inside buses and trains and at bus stops are all less cost effective.

Historically, Pitt purchased advertising space on the exteriors and interiors of Southeastern Pennsylvania Transportation Authority ("SEPTA") buses and trains, and on SEPTA bus stops. SEPTA advertisements are sold by Titan. Defendant L. Leonard Lundy's daughter, Sara Lundy, has been an Account Executive at Titan since March 2011, and is responsible for selling advertisements for SEPTA. Since approximately January 2012, Lundy Law has had the exclusive right to advertise legal services on the outside of SEPTA buses, pursuant to one-year, renewable contracts with SEPTA. For the period of the exclusive contract, other law firms cannot advertise on the exterior of SEPTA buses, even if the advertising space is not being used by Lundy or any other business. The SAC alleges that the exclusive contract with SEPTA is, in effect, renewable indefinitely, at Lundy's sole option.[3] In consideration for this

---

[3] Plaintiff also alleges that the exclusive contract is renewable indefinitely at the same rate. While the Court cannot reasonably infer that Lundy is entitled to renew the contract annually at the same rate from the facts alleged in the

exclusive right, Lundy Law paid a substantial advertising fee, above the market prices SEPTA typically charges for such advertising space. Pitt (and other law firms) may (and do) continue to purchase advertising space inside SEPTA buses and trains and on SEPTA bus stops, but are allegedly foreclosed by terms of Lundy Law's exclusive contracts with SEPTA from entering into their own exclusive contracts with SEPTA. Pitt also alleges that Sara Lundy gave her father access to competitively sensitive information, as she was the point person for advertising sales for competing law firms, including Pitt.

Pitt claims that exterior bus advertisements are very effective, and are unique in that they serve as moving billboards, reaching more prospective clients than stationary billboards or interior bus and train advertisements. Pitt alleges that it received 142 client referrals from SEPTA advertisements (presumably including both interior and exterior advertisements) in 2008, 160 in 2009, 197 in 2010, and 146 in 2011, but only 16 in 2012 and 12 in 2013, after it was barred from running advertisements on the exteriors of SEPTA buses.

In addition to the SEPTA contract, Lundy has entered into exclusive contracts to advertise on the exterior of Berks Area Regional Transportation Authority ("BARTA") buses, as well as New Jersey Transit buses and Delaware's DART buses. In the past, Pitt has advertised on the KYW radio station during rush hour, but now Lundy has an exclusive contract for rush hour advertising slots scheduled around weather and traffic updates on KYW, precluding other law firms from buying advertising in those desirable time slots on that station for at least one year. Finally, Lundy has an exclusive contract with the Wells Fargo Center sports and entertainment arena, which precludes advertising by competing law firms for at least one year. Lundy obtained all of these exclusive contracts by paying "unusually high" advertising fees, well above market rates.

As evidence of Lundy Law's market power, Plaintiff alleges that Lundy has been able to

SAC, this factual issue is not dispositive.

charge its clients higher contingency fees (as high as 45%), demand cash referral fees from doctors to whom Lundy refers clients, and enter into agreements with other law firms, pursuant to which other firms contribute to Lundy Law's advertising budget and pay Lundy Law referral fees, and Lundy Law runs ads for legal services that it does not provide (e.g. representation in social security and workers' compensation cases) and refers those cases to the other law firms.

As a result of all these activities, Pitt has suffered a decrease in net income, whereas in the years before Lundy Law entered into the exclusive advertising contracts, Pitt had typically seen an increase in net income from year to year.

## II.   STANDARD OF REVIEW

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[4] In determining whether a motion to dismiss is appropriate the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[5] Courts are not bound to accept as true legal conclusions couched as factual allegations.[6] Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[7] Even in complex antitrust cases, courts must apply the plausibility standard and not a heightened standard.[8] The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[9] The court has

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[5] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).
[6] *Twombly,* 550 U.S. at 555.
[7] *Id.* at 570.
[8] *West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir. 2010) (holding that it is inappropriate to apply heightened scrutiny to antitrust and other complex cases).
[9] *Twombly,* 550 U.S. at 562.

no duty "to conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[10]

## III.    DISCUSSION

The Court notes that the additional factual allegations set forth in the SAC generally fail to correct the pleading deficiencies discussed in the Court's December 13, 2013 memorandum opinion. The Court incorporates the relevant reasoning from that decision herein, and sets forth the following additional grounds for its ruling.

### A.    Antitrust Claims: Sherman Act, Section 2 Claims (Counts 1 and 3)

In Counts 1 and 3, Pitt alleges that Lundy Law has violated Section 2 of the Sherman Act, [11] through unlawful monopolization or attempted monopolization of trade. A party can violate Section 2 through unilateral conduct which creates or attempts to create a monopoly, or by harmfully exercising monopoly power.[12] Pitt argues that Lundy Law has achieved or has attempted to achieve a monopoly in the market for small personal injury and social security disability and workers' compensation law firms in the Greater Philadelphia Region. Pitt argues that Lundy Law has engaged in multiple anti-competitive schemes in restraint of trade in the legal market, causing injury to competitor law firms, including Pitt.

To state a claim under Section 2, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[13] As an essential part of its case, a plaintiff must define the relevant geographic market and product market, and explain a

---

[10] *Id.* (citing *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n.3 (1st Cir. 1976)).
[11] 15 U.S.C. § 2.
[12] The Amended Complaint does not allege the exercise of monopoly power.
[13] *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

defendant's power within that market.[14] The Court will begin with a discussion of the relevant markets.

> 1.    The Relevant Geographic Market

Pitt defines the relevant geographic market as the Greater Philadelphia Region. The Court previously held that Pitt's geographic market definition is adequately supported for notice and pleading purposes. Defendants have not provided a basis to disturb that ruling here.[15]

> 2.    The Relevant Product Market

Pitt defines the relevant market as "the market for legal services provided by small personal injury and social security disability and workers' compensation law firms in the Greater Philadelphia Region."[16] Lundy Law challenges the adequacy of the pleading with regard to this asserted market.[17] In determining whether competing entities are in the same market, the Third Circuit has held that the Court must examine whether products or services are readily substituted for one another,[18] and define the market to "encompass all interchangeable substitute products."[19] Failure to do so means that "the relevant market is legally insufficient and a motion to dismiss may be granted."[20]

The services provided by law firms in the proposed market may be readily substituted for one another, but the facts alleged do not support an inference that the proposed market definition encompasses all interchangeable substitute products. Law firms range in size from sole practitioners to firms of hundreds of lawyers, and firms of any size can and do handle personal injury, social security disability, and workers' compensation cases. Pitt's market definition,

---

[14] *Id.*
[15] Mem. Op. and Order dated Dec. 13, 2013.
[16] SAC ¶ 34.
[17] In its earlier ruling, the Court assumed without deciding that this market definition was sufficiently pled. Lundy Law has put forth substantial argument that warrants a closer examination of this issue.
[18] *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007).
[19] *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).
[20] *Id.*

because it is limited to "small" law firms (where "small" apparently means whatever Pitt understands it to mean) is unrealistically narrow;[21] as pled, it does not include all legal services providers that consumers might retain for the same purpose.[22] Pitt provides absolutely no factual basis for excluding from its market definition the many law firms which provide the same legal services as the firms within its proposed market definition. Pitt has failed to adequately plead a product market, which alone provides a basis for dismissal of the SAC.[23]

       3.   <u>Defendant's Power in the Market</u>

      To state a claim for monopolization or attempted monopolization, Pitt also must allege that Lundy Law has increased its market power (or is expected to do so), creating a dangerous probability of achieving monopoly power. Pitt alleges that Lundy Law has gained market power by entering into, and then leveraging, exclusive advertising contracts for key advertising venues. As evidence of Lundy Law's increased market power, Pitt alleges that: 1) Lundy Law began charging higher contingency fees in personal injury cases—sometimes as high as 45%; 2) Lundy Law demands and receives high cash referral fees from doctors to whom Lundy refers clients; and 3) Lundy Law has entered into advertising partnership agreements with other law firms. Assuming for purposes of this motion that each of these allegations is indicative of increased market power, the Court assesses whether these facts give rise to a plausible inference that the increased market power evidences a dangerous probability of achieving monopoly power.[24] For the reasons set forth below, the Court finds that Pitt has not adequately pled that Lundy Law's conduct has created a dangerous probability of achieving monopoly power.

      With regard to contingency fees, the Court notes that when one competitor raises prices,

---

[21] *Cyber Promotions, Inc. v. AOL, Inc.*, 948 F. Supp. 456, 461 (E.D. Pa. 1996).
[22] *Queen City Pizza*, 124 F.3d at 436.
[23] *Id.*
[24] *Pastore*, 24 F.3d at 512.

other competitors actually stand to gain market share, unless there are barriers to entry into the market.[25] Barriers to entry may include one competitor's control over superior resources or entrenched consumer preferences.[26] Here, Pitt admits that entrenched consumer preferences are not a factor in the selection of a firm to handle personal injury, workers' compensation and social security disability matters, so the Court must examine whether Pitt has pled that Lundy Law's conduct has resulted in its control over a superior resource. Pitt does not allege that Lundy Law controls *any resource* necessary for the establishment of a law firm or the practice of law. Rather, Pitt alleges that Lundy Law controls certain, highly effective, *advertising opportunities*, which might provide one means of attracting clients to a law firm, whether new or well-established.[27] The Court has previously held that Lundy Law does not control all potentially effective advertising opportunities in the region, and while competitors may be relegated to using inferior or more expensive advertising opportunities, Pitt has not pled facts from which the Court can infer that Lundy Law's exclusive advertising contracts have created or are likely to create a barrier to entry into the legal market. Thus, although Lundy Law's higher-than-market-rate contingency fees are indicative of market power, Pitt has not pled facts from which the Court can infer a dangerous likelihood of Lundy Law achieving monopoly power.

With regard to the alleged payment of referral fees by doctors to whom Lundy Law refers clients, the Court notes that Pitt does not allege that referrals to medical practices or referral fees from medical practices are necessary for the practice of law. In fact, Pitt alleges that the practice of referring clients in exchange for fees is unethical. Accordingly, while this practice may be indicative of market power, the practice cannot impact competition for clients in the legal

---

[25] *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 580 (1986).
[26] *See Yeager's Fuel, Inc. v. Pa. Power & Light Co.*, 953 F.Supp. 617, 649 (E.D.Pa. 1997).
[27] The Court notes that traditionally, law firms attract clients by developing a stellar reputation for providing legal services. Although the legal profession does permit law firm advertising, the Court assumes that a firm's reputation still plays an important role in attracting clients.

market. To the extent that Pitt argues that these cash referral fees from doctors harm competition by providing a source of revenue to pay for Lundy Law's advertisements, the Court rejects this claim. The source of advertising funds is not relevant to the Court's inquiry into any anticompetitive effect of the advertising contracts.

With regard to Lundy Law's advertising agreements with other law firms, assuming the Court can infer from these agreements that Lundy Law enjoys significant market power, for the reasons set forth below, the Court finds that the SAC fails to sufficiently plead that Lundy Law's market power has increased through anticompetitive conduct, as opposed to legitimate, competitive conduct.

4.    Anticompetitive Conduct

In addition to pleading that Lundy Law has increased its market power, Pitt must plead facts from which the Court can infer that this increased market power was or will be achieved through predatory or anticompetitive conduct, with an intent to monopolize the legal market, not through growth, a superior product, business acumen, or historic accident.[28]

Pitt's antitrust claim rests on the premise that control over superior advertising opportunities, as opposed to control over resources necessary to engage in the practice of law, can form the basis of an antitrust claim in the legal market. As previously noted, the goal of all advertising is to increase market share. The fact that one competitor implements a highly successful marketing strategy does not render that strategy anticompetitive or predatory. Lundy Law's alleged success in attracting clients, at the expense of its competitors,[29] does not, without more, give rise to an inference that its long-term, exclusive advertising contracts with Titan and

---

[28] *Broadcom Corp. v. Qualcomm, Inc.,* 501 F.3d 297, 307 (3d Cir. 2007).

[29] Pitt notes that it has lost revenue since Lundy Law entered into exclusive contracts with SEPTA for exterior bus advertisements (Pitt's 2013 year-end total net income was down 5.6% from 2012, and its 2012 net was approximately 15% lower than its 2011 net), and that it has received far fewer referrals based on SEPTA advertisements (from a peak of 197 in 2010 to a low of 12 in 2013).  SAC ¶¶ 301-302, 309, 312.

others are anticompetitive.

Pitt fails to plead facts from which the Court can infer that Lundy Law's exclusive advertising contracts have reduced or are likely to reduce the number of competitors in the legal market, created barriers to entry into the legal market, created barriers for consumers wishing to retain competing firms or compare fees charged by competing firms, or reduced competitors' ability to provide requested legal services if retained. Because Pitt has not adequately alleged that Lundy Law's exclusive contracts have harmed competition, the Court finds the pleading insufficient to state a claim for Section 2 antitrust violations.

Pitt also argues that the advertising agreements Lundy Law has entered into with other law firms are anticompetitive. The advertising agreements Pitt describes are alleged to require the agreeing firms to forgo advertising in certain available venues where Lundy Law advertisements also run (e.g. inside SEPTA buses), and in exchange Lundy agrees to run advertisements for legal services it does not provide and refer cases generated from those ads to the agreeing firms.[30] Pitt alleges that the goal is to divert inquiries from potential clients into the Lundy Law intake system, even in areas of law in which Lundy Law does not practice, and argues that this practice of advertising the services of multiple firms using the Lundy Law name and telephone number "deprives" potential clients of information about competing law firms. But these advertising agreements only require *agreeing* law firms to forgo advertising in certain locations; they do not prevent non-agreeing law firms, such as Pitt, from advertising inside SEPTA buses or in any other forum where Lundy Law advertises on a non-exclusive basis. Pitt therefore does not adequately plead that these advertising agreements injure competition.

5.   Conclusion

---

[30] The Court previously found that Pitt has adequately stated a claim under the Lanham Act with regard to this conduct, and does not disturb this ruling.  The Court notes that false advertising will rarely give rise to an antitrust claim.  *Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*,  401 F.3d 123, 136-138 (3d Cir. 2005).

Because Plaintiff has not adequately defined the relevant product market, and has failed to plead facts giving rise to a plausible inference that there is a dangerous possibility that Lundy Law will achieve monopoly power, the Court will dismiss Pitt's monopolization and attempted monopolization claims.

### B.  Antitrust Claims: Sherman Act, Section 1 (Counts 2 and 4)

Section 1 of the Sherman Act prohibits contracts, conspiracies, and combinations in restraint of trade.[31] A claim under Section 1 must allege collective action—i.e. an agreement between two or more actors to monopolize a market.[32] A plaintiff must also plead: 1) some overt act by the parties to the agreement, acting with unity of purpose or common design to engage in unlawful behavior; 2) with specific intent to monopolize the relevant product and geographic markets; and 3) a causal connection between the agreement and an injury to the plaintiff.[33]

The Court rejected the conspiracy claims set forth in the FAC, and so, in the SAC, Pitt has pled entirely new conspiracy theories. Now, Pitt argues that: 1) Lundy Law's exclusive contract to advertise on SEPTA buses constitutes a conspiracy with Titan to engage in unlawful exclusive dealing; and 2) Lundy Law's advertising agreements with other law firms constitute a conspiracy to commit antitrust violations.

### 1.  The Exclusive Advertising Agreements

Pitt argues that the exclusive contract between Titan and Lundy Law, under which Titan may not sell exterior bus advertisements on SEPTA to any law firm other than Lundy Law, constitutes a conspiracy in restraint of trade. Long-term exclusive dealing arrangements are illegal only when they foreclose a substantial share of the market and thus harm competition.[34] In

---

[31] 15 U.S.C. § 1.
[32] *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 639 (3d Cir. 1996).
[33] *Id.*; *Howard Hess Dental Lab., Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 253 (3d Cir. 2010).
[34] *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012).

examining whether a plaintiff has adequately pled that an exclusive arrangement unduly restrains trade, the Court must look at the factual allegations regarding the restrictiveness of the challenged practice, the economic usefulness of the practice, and whether the challenged practice creates barriers to entry, and can also consider factors such as the duration of the agreement, ease of termination, alternative outlets for competitors, and justifications of the buyer and seller for the arrangement.[35]

The Court accepts Pitt's assertion that Titan account executive Sara Lundy's involvement in Lundy Law's exclusive advertising contract for exterior SEPTA bus advertisements gives the transaction an appearance of impropriety. The Court also accepts, for purposes of this Motion, that Pitt has accurately characterized the exclusive advertising contracts with SEPTA as *de facto* perpetual contracts, renewable at Lundy Law's sole option. While the challenged practice restricts only one particular advertising opportunity, leaving open a multitude of other opportunities, including other opportunities with SEPTA and other Titan clients, the Court also accepts, for the purpose of this discussion, Pitt's assertion that exterior SEPTA bus advertisements are uniquely cost-effective (which is presumably why Lundy Law was willing to pay a premium for exclusive rights to such advertising).  However, the Court need not accept as true the unsupported premise that advertising on the exterior of SEPTA buses is necessary to the survival of competitors in the legal market, or the legal conclusion that the contracts for SEPTA bus advertising lessen competition or create barriers to entry into the legal market. From the facts alleged, the Court can infer, at most, that Lundy Law's exclusive contract with SEPTA may result in a rival's need to increase its advertising budget or face an undesirable decrease in business. The Court cannot reasonably infer that the contracts will have a ruinous effect on rivals in the legal market, foreclosing competition in a substantial share of that market.

---

[35] *ZF Meritor*, 696 F.3d at 327.

### 2.    The Joint Advertising Agreements

Pitt has failed to plead facts from which the Court can infer that the agreements between Lundy Law and the agreeing law firms constitute an agreement between two or more actors to monopolize a market. With regard to Lundy Law's intent to monopolize, Pitt points to Lundy Law's expressed desire to be the dominant legal provider within its niche. However, this could merely reflect a desire to compete successfully. Moreover, the Court cannot infer from the facts alleged that the *agreeing law firms* harbored any anticompetitive intention. An equally plausible inference is that, aware of Lundy Law's exclusive access to highly efficient advertising opportunities, the agreeing law firms entered into an agreement for rational business reasons, to grow their own legal practices, not to promote Lundy Law's monopoly power in the market. In fact, the agreements directly (and intentionally) benefit the agreeing competitors in the relevant market—ensuring that those competitors continue to have clients to serve.[36]

### 3.    Conclusion

Pitt's factual allegations best support an inference that Lundy Law is winning in the competition for clients, because it has secured and leveraged valuable marketing opportunities. For the reasons set forth above, Pitt has failed to plead facts from which the Court can infer that the agreements at issue were intended to result in, have resulted in, or will result in restraint of trade. Accordingly, Counts 2 and 4 will be dismissed.

### B.    **State Law Claims**[37]

Pitt also asserts the following state law claims: common law unfair competition (Count

---

[36] In addition, as noted above, the agreeing law firms' commitment to refrain from advertising in certain venues (e.g. inside SEPTA buses) may indirectly benefit non-agreeing competitors in the relevant market, by increasing available advertising space in those venues and potentially decreasing the number of law firms advertising in that space, and increasing the salience of legal services advertisements which are posted there.

[37] Because one of Plaintiff's federal law claims survives, the Court has supplemental jurisdiction over Plaintiff's related state law claims.

6), tortious interference with prospective contracts (Count 7), and violation of Pennsylvania's

Dragonetti Act (Count 8). Defendants move to dismiss the unfair competition claim and the

tortious interference with prospective contracts claim.

      1.      <u>Unfair Competition (Count 6)</u>

Pennsylvania follows the Restatement (Third) of Unfair Competition,[38] which provides

that one business may be liable for harm to the commercial relations of another if:

> (a) the harm results from acts or practices of the actor actionable by the other under the
> rules of this Restatement relating to:
>> (1) deceptive marketing, as specified in Chapter Two;
>> (2) infringement of trademarks and other indicia of identification, as specified in
>> Chapter Three;
>> (3) appropriation of intangible trade values including trade secrets and the right of
>> publicity, as specified in Chapter Four;
> or from other acts or practices of the actor determined to be actionable as an unfair
> method of competition, taking into account the nature of the conduct and its likely effect
> on both the person seeking relief and the public; or
>
> (b) the acts or practices of the actor are actionable by the other under federal or state
> statutes, international agreements, or general principles of common law apart from those
> considered in this Restatement.[39]

Unfair competition is customarily defined as "the passing off of a rival's goods as one's

own."[40] This would include using a rival's trademark or trade name to sell a rival product, or

otherwise creating confusion between a defendant's goods and those of the rival. However,

unfair competition also has been interpreted somewhat more broadly, to include such things as

improper use of a rival's confidential information, or profiting from a rival's expenditure of

labor, skill, or money.[41] Unfair competition is not a catch-all for any form of business

misconduct.

---

[38] *Giordano v. Claudio,* 714 F. Supp. 2d 508, 521-22 (E.D. Pa. 2010).
[39] Restatement (Third) of Unfair Competition §1.
[40] *Giordano v. Claudio,* 714 F. Supp. 2d at 521 (citing *Scanvec Amiable Ltd. v. Chang*, 80 Fed. App'x 171, 180 (3d Cir. 2003).
[41] *Granite State Ins. Co. v. Aamco Transmissions, Inc.,* 57 F.3d. 316, 320 (3d Cir. 1995).

In the SAC, Pitt alleges that Lundy Law has: 1) engaged in false, misleading, and deceptive advertising; 2) filed sham litigation; 3) demanded and received unethical and illegal referral payments from doctors; 4) entered into long-term exclusive advertising contracts; and 5) was provided access to competitively sensitive information regarding its competitors' advertising budgets and practices by Titan employee Sara Lundy. Pitt further alleges that these acts were calculated to procure an unfair competitive advantage.

The Court will allow Pitt to pursue its claim that Titan, through its employee Sara Lundy, provided Lundy Law with competitively sensitive information regarding competitors' advertising budgets and practices, as Pitt may be able to establish that this constituted an appropriation of Pitt's intangible trade values, and such conduct could harm Pitt's commercial relations.[42]

As the definition of deceptive marketing in the Restatement (Third) of Unfair Competition, § 2 is nearly identical to that set forth in Section 1125(a) of the Lanham Act, and the Court previously held that Pitt adequately stated a claim under the Lanham Act, the Court will also allow Pitt to pursue its unfair competition claim with regard to its false or misleading advertising allegations.[43]

With regard to the other wrongful conduct to which Pitt points, these acts do not give rise to unfair competition claims under Pennsylvania law. The Court cannot allow Pitt to pursue its unfair competition claim with regard to its allegations that Lundy Law pursued sham litigation, as this conduct is best addressed through the Dragonetti Act claim, and cannot be construed to state an unfair competition claim.

The Court will not permit Pitt to proceed with the claim that Lundy Law's demand for

---

[42] Restatement (Third) of Unfair Competition §1.
[43] *See Envir. Tectonics Corp. v. Walt Disney World, Co.*, 2008 WL 821065, at *15-16 (E.D. Pa. Mar. 26, 2011); *Peek v. Whittaker*, 2014 WL 2154965, at *10 (W.D. Pa., May 22, 2014).

referral payments from doctors constituted unfair competition, as the Pitt has not adequately alleged that this conduct involved any misappropriation from Pitt, any misrepresentation about Pitt (or Lundy Law), or any injury to Pitt's reputation, manner of doing business, or commercial relations.

Finally, the Court will not permit Pitt to proceed with the claim that Lundy Law's long-term exclusive advertising contracts constitute unfair competition. As pled, these contracts do not violate federal antitrust laws, for the reasons outlined above, and, as they do not involve any misappropriation from or misrepresentations about Pitt, or injure Pitt's reputation, no other basis for state unfair competition liability applies.

2. <u>Tortious Interference With Contract Claim (Count 7)</u>

Pitt alleges that Lundy Law tortuously interfered with Pitt's anticipated future advertising contracts with KYW, SEPTA, BARTA, the Wells Fargo Center, and others, and also interfered with Pitt's ability to enter into exclusive advertising contracts with certain venues. To state a claim for tortious interference under Pennsylvania law, a plaintiff must plead: 1) the existence of a prospective contractual relationship between the plaintiff and a third party; and 2) purposeful action by defendant to interfere with that prospective relationship; 3) without privilege or justification; 4) causing legal injury.[44] The Court has previously held that Pitt failed to state a tortious interference with prospective economic relations claim, and so holds again, for the same reasons. Specifically, the Court again holds that Pitt has not alleged facts sufficient to show that Pitt had a mutually anticipated prospective contractual relationship (exclusive or otherwise) with the relevant entities.[45]

IV.    **CONCLUSION**

---

[44] *CGB Occupational Therapy, Inc. v. RHA Health Services,Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).
[45] *See Acumed LLC v. Advanced Surgical Servs, Inc.*, 561 F.3d 199, 213 (3d Cir. 2009).

For the reasons discussed above, Counts 1, 2, 3, 4, and 7 are dismissed with prejudice, and Plaintiff may proceed with Counts 5, 6, and 8, subject to any limitations set forth herein.