IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LARRY PITT & ASSOCIATES,

       Plaintiff,

    v.

LUNDY LAW, LLP, L. LEONARD
LUNDY, AND TITAN OUTDOOR LLC,

       Defendants.

Civil Action No. 13-02398-CMR

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTIONS FOR RECONSIDERATION AND FOR
ENTRY OF FINAL JUDGMENT AND CERTIFICATION FOR APPEAL**

## TABLE OF CONTENTS

I.   RECONSIDERATION ........................................................................................................ 1

   A.   PITT'S PLAUSIBLE MARKET DEFINITION HAS REMAINED UNCHANGED
      SINCE THE COURT ACCEPTED IT IN THE FIRST AMENDED COMPLAINT. ... 1

   B.   THE COMPLAINT PROPERLY PLEADS THAT THE LUNDY DEFENDANTS
      HAVE ATTAINED MARKET POWER BY CONTROLLING ESSENTIAL
      ADVERTISING RESOURCES. ............................................................................... 3

   C.   THE COMPLAINT PROPERLY PLEADS THAT THE LUNDY DEFENDANTS
      INTENDED TO MONOPOLIZE AND THAT OTHER LAW FIRMS CONSPIRED
      TO FURTHER THAT MONOPOLIZATION. ............................................................ 5

II.  CERTIFICATION FOR APPEAL ..................................................................................... 6

   A.   THE COURT'S SEPTEMBER 30 ORDER IS A FINAL JUDGMENT AS TO THE
      ANTITRUST CLAIMS. .......................................................................................... 6

   B.   THERE IS NO JUST REASON FOR DELAY. ...................................................... 8

   C.   CERTIFICATION UNDER 28 U.S.C. § 1292(b) IS ALSO APPROPRIATE. ............ 10

## TABLE OF AUTHORITIES

*Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.,*
  1993 WL 169849 (E.D. Pa. May 14, 1993) ........................................................................7

*Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.,*
  33 F.3d 194 (3d Cir. 1994) ................................................................................................7

*Allis-Chalmers Corp. v. Philadelphia Elec. Co.,*
  521 F.2d 360 (3d Cir. 1975) .........................................................................................8, 9

*Andela v. Am. Ass'n for Cancer Research,*
  389 F. App'x 137 (3d Cir. 2010) .....................................................................................10

*Apartment Source of Phila. v. Phila. Newspapers, Inc.,*
  1999 WL 191649 (E.D. Pa. Apr. 1, 1999) .........................................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .........................................................................................................10

*Bldg. Indus. Fund v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO,*
  992 F. Supp. 162 (E.D.N.Y. 1996) ....................................................................................9

*Burella v. City of Philadelphia,*
  2010 WL 235110 (E.D. Pa. Jan. 14, 2010) .....................................................................10

*Bush v. Adams,*
  629 F. Supp. 2d 468 (E.D. Pa. 2009) .................................................................................9

*In re Chocolate Confectionary Antitrust Litig.,*
  607 F. Supp. 2d 701 (M.D. Pa. 2009) ..........................................................................9, 10

*Ethypharm S.A. France v. Abbott Labs.,*
  707 F.3d 223 (3d Cir. 2013) ............................................................................................10

*Katz v. Carte Blanche Corp.,*
  496 F.2d 747 (3d Cir. 1974) ............................................................................................10

*Kapossy v. McGraw-Hill, Inc.,*
  942 F. Supp.  996 (D.N.J. 1996) .......................................................................................7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
  124 F.3d 430 (3d Cir. 1997) ..............................................................................................2

*Sears, Roebuck & Co. v. Mackey,*
  351 U.S. 427 (1956) .................................................................................................6, 7, 8

*SigmaPharm, Inc. v. Mut. Pharm. Co.,*
    454 F. App'x 64 (3d Cir. 2011) .........................................................................................10

*In re Text Messaging Antitrust Litig.,*
    630 F.3d 622 (7th Cir. 2011) ............................................................................................10

Plaintiff Larry Pitt & Associates ("Pitt") files a single reply brief in support of his pending motions for reconsideration of the Court's September 30, 2014 order and for entry of final judgment and certification for immediate appeal of the Antitrust Claims (Counts 1-4).[1]

## I.    RECONSIDERATION

### A.    PITT'S PLAUSIBLE MARKET DEFINITION HAS REMAINED UNCHANGED SINCE THE COURT ACCEPTED IT IN THE FIRST AMENDED COMPLAINT.

In his First Amended Complaint, Pitt pleaded a clearly defined relevant services market in "small personal injury and Social Security disability and workers' compensation law." (FAC, ¶¶ 17-23.) It was manifest that the market was not limited to "small law firms" but encompassed all law firms offering services in three related practice areas, including "small personal injury." (FAC, ¶¶ 24-25 (Pitt and Lundy Law are both, among other things, "law firm[s] concentrating in small personal injury law.")) As Pitt pointed out in his initial brief – and as Defendants now ignore – the Court last year accepted this market definition for purposes of a motion to dismiss. (Dec. 13, 2013 Mem. Op. at 7 (assuming for purposes of the motion that Pitt had sufficiently defined "the legal market consisting of law firms focused on small personal injury, Social Security disability, and workers' compensation claims.")) Because the Court did not question or take issue with the market definition in the First Amended Complaint, it is defined in exactly the same way in the Second Amended Complaint. (SAC, ¶¶ 34-38.)

Against that background, it is regrettable that Defendants persist in urging upon the Court a grammatically impossible interpretation, claiming that Pitt's proposed market (despite what

---

[1] Defendant Titan did not respond to either motion, although Titan has an interest in the outcome of both motions and also remains in the case as a party defendant under the Court's ruling on Pitt's unfair competition claim, which states: "The Court will allow Pitt to pursue its claim that Titan, through its employee Sara Lundy, provided Lundy Law with competitively sensitive information regarding competitors' advertising budgets and practices, as Pitt may be able to establish that this constituted an appropriation of Pitt's intangible trade values, and such conduct could harm Pitt's commercial relations." (Sept. 30, 2014 Mem. Op. at 15.)

was pled) consists only of "small law firms." That reading is inconsistent with the plain language

of ¶¶ 24-25 of the FAC and ¶¶ 35-36 of the SAC, among other averments. Pitt's motion simply

asks the Court to recognize that the Court got this issue right the first time but was later misled

by Defendants' repeated – and disturbingly ongoing – mischaracterizations of what the

complaint actually says.[2]

Because Pitt defines the relevant market as a set of related legal services – no matter who

is offering those services – for which there are no substitutes, it automatically passes the *Queen*

*City Pizza* test.[3] (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Reconsideration at 4-5.)

Defendants have not identified a single other service that a consumer could substitute for legal

services in the area of small personal injury, workers' compensation, and Social Security

disability. That is because there are no such services; and even if there were any, their alleged

substitutability for the legal services set forth in the complaint could only be properly evaluated

through discovery and expert analysis.

Defendants do fish out one red herring for the first time after a year and a half of

---

[2] For an egregious (but hardly unique) example of how Defendants misled the Court, consider this sleight of hand from their brief in support of the motion to dismiss the SAC (document 45 at 14): "Pitt merely asserts . . . that the fees charged by small personal injury, social security disability, and workers' compensation law firms 'are not constrained by other types of law firms'" (citing SAC, ¶ 35). The *actual* wording of SAC ¶ 35 is: "[P]rices charged for legal services provided by **law firms for small personal injury** and social security disability and workers' compensation legal services are not constrained by other types of law firms" (emphasis added). Thus, Defendants deliberately avoided quoting the very language that makes nonsense of the erroneous interpretation they wanted to foist on the Court.

[3] *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997). By using the generic term "law firms" in his pleading, Pitt does not exclude from the proposed market sole practitioners or anyone else lawfully offering the relevant services in the relevant geographic market. How the competing lawyers choose to organize their businesses is of no relevance to the market definition. Nor does Pitt intend to exclude law firms that practice in just one or two of the three related areas that make up the relevant legal services market. After all, the complaint alleges that Lundy Law practices only in the area of small personal injury law and merely pretends to handle workers' compensation and Social Security disability claims. (SAC, ¶ 40.)

2

litigation by attacking the concept of "small personal injury" legal services. "Small personal injury" is not a difficult concept to grasp; it means injuries that are not catastrophic. The Court appeared to have no difficulty understanding this term in its December 2013 opinion. Defendants' argument also fails because the complaint describes the distinctive market structure of law firms handling "small personal injury" claims (as well as workers' compensation and Social Security disability claims). As pled, they are claims in which the law firm collects a contingency fee that is often relatively small per case (SAC, ¶ 41), such that aggregating clients in high volume is the typical method of achieving sufficient revenues and economies of scale (SAC, ¶¶ 41-42), and the necessary means of doing so is a particular kind of advertising (SAC, ¶¶ 45-46). The complaint therefore avers facts (which must be accepted as true) that explain what "small personal injury" means for purposes of the market definition, if any explanation were needed.[4]

## B.   THE COMPLAINT PROPERLY PLEADS THAT THE LUNDY DEFENDANTS HAVE ATTAINED MARKET POWER BY CONTROLLING ESSENTIAL ADVERTISING RESOURCES.

Despite Defendants' assertions to the contrary, the complaint explains in detail why certain advertising opportunities are essential to the viability of a law firm in the relevant market. (SAC, ¶¶ 41-55 and 80-91; *see* Plaintiff's Mem. of Law in Supp. of Mot. for Reconsideration at 7-11.) Indeed, the fact that Defendants were willing to pay a large premium to secure exclusive rights to those advertising opportunities (SAC, ¶ 130), in conjunction with their express intent to "dominate our market" using bus-exterior advertisements (*see* Plaintiff's Sur-Reply Mem. of Law in Opp. to Mot. to Dismiss [document 67]), creates a reasonable inference that those opportunities are indeed essential, exactly as the complaint avers. Further, those same allegations

---

[4] To the extent the Court now finds the SAC's market definition unclear, Pitt respectfully reminds the Court that until now he had no reason to amend that part of his pleading, based on the Court's December 13, 2013 opinion, and leave to amend, not dismissal with prejudice, is the appropriate remedy.

3

explain why Defendants' exclusive advertising deals, together with the other parts of their scheme, create barriers to entry in the relevant market. Contrary to Defendants' representations, the complaint avers in detail that a law firm simply will not obtain a sufficiently high volume of clients to survive if it does not use the specific forms of advertising that the Lundy Defendants are monopolizing. The "inferior" advertising alternatives are, as pled, no alternatives at all, because, used in isolation, they only increase Pitt's and other rivals' costs without providing sufficient return to make a law firm viable in the defined market. (SAC, ¶¶ 55, 80-91.) The Lundy Defendants' dominance of the essential advertising resources ("BUSES," as they admit) is therefore a barrier to entry.

Judge Padova's opinion denying a similar motion to dismiss in the *Apartment Source of Philadelphia* case demonstrates that Pitt should have an opportunity to prove, through discovery and expert analysis, that particular modes of advertising are indeed essential to its business.[5] But Defendants' only response to that opinion is to misread it. They speculate that Judge Padova reached his conclusion "only because" the corporate defendant in that case exercised control over the essential advertising resource through a parent-subsidiary relationship. (Resp. in Opp. to Plaintiff's Mot. for Reconsideration at 11.) But the opinion simply notes as a factual matter that the defendant was able to control the essential advertising resource because it owned the subsidiary that managed that resource. The fact of *control* was the important point, not the fact of ownership. Here, control of the essential advertising resources is based on perpetually renewable exclusive contracts rather than on ownership, but control is control. And the complaint expressly pleads that, by contract, it is the Lundy Defendants who control whether any competitor can advertise in the essential venues. (SAC, ¶¶ 129-130, 149, 152, 207-230.)

---

[5] *Apartment Source of Phila. v. Phila. Newspapers, Inc.*, 1999 WL 191649 (E.D. Pa. Apr. 1, 1999). (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Reconsideration at 10-11.)

4

C.      THE COMPLAINT PROPERLY PLEADS THAT THE LUNDY
        DEFENDANTS INTENDED TO MONOPOLIZE AND THAT OTHER
        LAW FIRMS CONSPIRED TO FURTHER THAT MONOPOLIZATION.

Defendants' intent to monopolize the relevant market is shown by the complaint's averments that they used their exclusive access to the essential advertising resources to falsely represent to the public that Lundy Law handles workers' compensation and Social Security disability claims. The only plausible explanation for that blatantly unethical and high-risk conduct is that Defendants intended to destroy their competitors' ability to attract clients, instead attracting those same clients to Defendants' own intake system – even though all that Lundy Law could do with many of the clients thus obtained was refer them to another law firm. In other words, as Leonard Lundy has proclaimed, Defendants intended to dominate the market. (SAC, ¶¶ 257-259.) Even without formal discovery, Pitt was able to find a document in which Lundy Law's marketing manager expressed the intention to "dominate our market" using "BUSES," as noted above. Those statements alone, in this context, should preclude Rule 12(b)(6) dismissal of the Antitrust Claims as to Defendants' intent to monopolize.[6]

Similarly, the complaint avers through facts – not conclusions, as Defendants represent – that the competing law firms identified as the Lundy Defendants' "advertising partners" knowingly conspired to further the Lundy Defendants' market power. Pitt does not allege that these conspiring law firms "share" monopoly power with the Lundy Defendants. Nor does Pitt allege that the conspiring law firms, in the wholesome pursuit of their own business interests, incidentally contribute to the Lundy Defendants' market power. On the contrary, the complaint alleges (and plausibly so) that the conspiring law firms consciously act so as to further *the Lundy Defendants'* monopolization of the relevant market by:

---

[6] *See* Plaintiff's Mem. in Supp. of Mot. for Reconsideration at 12-13.

- refraining from placing competing advertisements even in the advertising venues where the Lundy Defendants do not have exclusivity (SAC, ¶¶ 165-167);

- secretly coordinating with the Lundy Defendants to place and pay for Lundy Law advertisements falsely stating that Lundy Law provides services that are actually provided by the conspiring law firms (SAC, ¶¶ 161-164); and

- paying the Lundy Defendants for referrals of the workers' compensation and Social Security disability clients that the false advertisements draw into Lundy Law's intake system (SAC, ¶¶ 167, 170-171, 174).

Therefore, it is plausible, for purposes of Rule 12(b)(6), that conspiring law firms would act in this way: it is to their advantage to do so, given that the Lundy Defendants monopolize the advertising resources that are essential to the conspiring law firms' own businesses (just as they are essential to Pitt's business). These firms are knowing participants in a conspiracy to violate the antitrust laws and harm other competitors, like Pitt, who are vying for the same client base.

## II.   CERTIFICATION FOR APPEAL

### A.   THE COURT'S SEPTEMBER 30 ORDER IS A FINAL JUDGMENT AS TO THE ANTITRUST CLAIMS.

Pitt's opening brief on this issue showed that the Court's September 30 Order is "final" as to the Antitrust Claims for purposes of Rule 54(b). (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Final Judgment at 3-5.) Defendants now argue that the order is not final because the Antitrust Claims arise from the "same operative facts" as Pitt's tortious interference and unfair competition claims. This issue – which recurs throughout Defendants' briefs – is another red herring, because the Third Circuit will not have to consider any "facts" to determine whether the complaint adequately states claims under the antitrust laws. Defendants are also wrong because the Rule 54(b) finality test is not a "same operative facts" test.

To confirm that the September 30 Order is final and appealable under Rule 54(b), this Court need go no further than the Supreme Court's binding opinion in *Sears, Roebuck & Co. v.*

*Mackey*, 351 U.S. 427 (1956), discussed in Pitt's opening brief. There, the Supreme Court

affirmed that it was proper to certify Sherman Act claims for appeal (Count I of the complaint in

that case) while state-law tortious interference and unfair competition claims (Counts III and IV)

remained pending. In doing so, the Supreme Court observed:

> In the instant case, the claim dismissed by striking out Count I is based on the
> Sherman Act . . . while Counts III and IV do not rely on, or even refer to, that Act.
> They are largely predicated on common-law rights. The basis of liability in Count
> I is independent of that on which the claims in Counts III and IV depend. **But the
> claim in Count I does rest in part on some of the facts that are involved in
> Counts III and IV.**

351 U.S. at 437 n.9 (emphasis added). Thus, the Supreme Court, facing the same pattern of

claims present in this case, held that factual overlap among them was no obstacle to immediate

appeal under Rule 54(b), contrary to Defendants' arguments here.

Likewise, in the *Allen-Myland* case, Judge O'Neill held that factual overlap between

antitrust claims and a common-law tortious interference claim did not preclude certification of

the antitrust claims alone under Rule 54(b).[7] The Third Circuit did not disagree.[8] Defendants,

however, simply ignore both *Sears, Roebuck* and *Allen-Myland*.[9]

In short, although it is premature for any party in this case – where discovery has not

even begun – to take a definite position as to which still-to-be-learned facts may prove relevant

to which claims, the Court does not need to engage in that kind of speculation to grant Pitt's

---

[7] *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 1993 WL 169849 at *4 (E.D. Pa. May 14, 1993) (relying on *Sears, Roebuck*).

[8] *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 33 F.3d 194 (3d Cir. 1994) (deciding appeal without discussing Rule 54(b)), *cert. denied*, 513 U.S. 1066 (1994).

[9] The case Defendants rely on, *Kapossy v. McGraw-Hill, Inc.*, is not to the contrary. There, the court analyzed whether there were really multiple claims in the case and held that there was only a single claim encompassing different theories of recovery, so that certification under Rule 54(b) was inappropriate. 942 F. Supp. 996, 1000 (D.N.J. 1996) (Orlofsky, J.). Here, by contrast, the controlling authority of *Sears, Roebuck* shows there are multiple claims.

motion to certify the Antitrust Claims for immediate appeal. Certification is proper under *Sears, Roebuck* regardless of the factual relationship (or lack thereof) among these claims.[10]

## B.      THERE IS NO JUST REASON FOR DELAY.

The second part of the Rule 54(b) analysis turns on whether there is any "just reason for delay" in light of the five factors set forth in the *Allis-Chalmers* case.[11] Defendants seriously contest only the third and fifth of those factors. At the outset, however, the Supreme Court's *Sears, Roebuck* opinion – which presents an almost exact parallel with the structure of the dismissed and remaining claims in this case – is again fatal to Defendants' arguments. If those arguments had merit, they would have applied with equal force in *Sears, Roebuck*. Obviously, they did not, because the Supreme Court there held that Rule 54(b) certification was proper.

As to the third *Allis-Chalmers* factor (the possibility that the reviewing court might be obliged to consider the same issue a second time), Defendants offer another red-herring argument. They state that the Third Circuit might have to consider the same issues twice because the Antitrust Claims are "largely coextensive" with the tortious interference and unfair competition claims. But they never explain exactly how these different legal bases of liability are "largely coextensive." More importantly, controlling cases like *Sears-Roebuck* and *Allen-Myland*

---

[10] Defendants accuse Pitt of taking "inconsistent positions" by noting that the Antitrust Claims are distinct from the Surviving Claims but that proof of the Surviving Claims will nonetheless involve recourse to many of the same witnesses and sources of documentary evidence. There is no inconsistency. Among the witnesses in this case, it seems likely that at least some of them will possess information that relates only to the Antitrust Claims as well as different information that relates only to the Surviving Claims. Though taking two separate rounds of discovery may not, therefore, be duplicative in terms of content, it would certainly be burdensome for both witnesses and litigants. Defendants have not offered to refrain from objecting to discovery requests on the basis that they relate only to the Antitrust Claims and not the Surviving Claims – indeed, they have already made such objections. (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Final Judgment at 7, at the final bullet point on that page.)

[11] *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360 (3d Cir. 1975). (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Final Judgment at 5-8.)

show that even if the two sets of claims were "largely coextensive" in the factual sense that Defendants apparently intend, that would not be relevant to the Rule 54(b) analysis. As noted above, the argument that the Antitrust Claims are "coextensive" with other claims is also irrelevant because an immediate appeal here will not concern the "facts" of the case, but only the adequacy of the pleading – an issue that cannot possibly recur as the case proceeds.[12]

The fifth *Allis-Chalmers* factor encompasses "miscellaneous factors such as delay . . . and the like." Pitt previously outlined how immediate appeal of the Antitrust Claims will serve the interests of judicial economy and fairness. (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Final Judgment at 6-8.) Defendants strive mightily – but unsuccessfully – to show the opposite.[13] Given that the litigation is still at an early stage, application of the fifth factor involves some speculation about how the case will unfold in the future. For that very reason, the single most important element for the Court to consider here is the procedural status: where other courts have certified final orders under Rule 54(b) – or, for that matter, interlocutory orders under 28 U.S.C. § 1292(b) – they have generally done so when the case is at an early stage and appeal will not delay an imminent trial.[14] This case – where no defendant has filed an answer,

---

[12] For the same reason, there is no threat that the Third Circuit may have to "keep relearning the facts of [the] case on successive appeals," as Defendants suggest.

[13] Pitt's opening brief notes that an immediate appeal would help to avoid "two complete rounds of potentially burdensome discovery." (Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Final Judgment at 7.) Defense counsel intentionally misquotes that statement by adding words of their own: "two complete rounds of [duplicative and] potentially burdensome discovery." (Resp. in Opp. at 6.) They do this to rehash their meritless "same operative facts" argument. Adding language to an opposing party's brief in a way that changes the meaning of a sentence so as to support one's own arguments is wrong, at best. *See also* footnote 10, above.

[14] *Compare Bush v. Adams*, 629 F. Supp. 2d 468, 472-74 (E.D. Pa. 2009) (McLaughlin, J.) (Rule 54(b) certification of dismissal for lack of personal jurisdiction would be appropriate) *and In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707-8 (M.D. Pa. 2009) (Conner, J.) (granting § 1292(b) certification where discovery had not yet commenced) *with Bldg. Indus. Fund v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 992 F. Supp. 162, 191-92 (E.D.N.Y. 1996) (denying Rule 54(b) certification because discovery was complete and case

there has been no scheduling conference with the Court, no scheduling order has been issued, neither full fact nor expert discovery has commenced, and no trial date has been set – is exactly the type of case where certification for immediate appeal is most appropriate.

## C.   CERTIFICATION UNDER 28 U.S.C. § 1292(b) IS ALSO APPROPRIATE.

The Third Circuit in *Katz v. Carte Blanche Corporation* defined a "controlling question of law" as encompassing "at the very least every order which, if erroneous, would be reversible error on final appeal." 496 F.2d 747, 755 (3d Cir. 1974) (en banc). The concept also includes questions "serious to the conduct of the litigation either practically or legally." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 705 (citing, *inter alia, Katz*). The dismissal of the Antitrust Claims falls within both categories. Defendants offer no argument to rebut the sound reasoning of Chief Judge Conner in the *Chocolate Confectionary* case – "capable jurists may disagree about [*Twombly*'s] effect on plaintiffs' pleading obligations," *id.* at 707 – or Circuit Judge Posner in the *Text Messaging* case, both of which show that the dismissal of an antitrust claim under *Twombly* presents both a controlling question of law and substantial ground for difference of opinion and is therefore an appropriate issue for § 1292(b) certification.[15]

---

ready for trial), *aff'd*, 141 F.3d 1151 (2d Cir. 1998) (unpublished decision) *and Burella v. City of Philadelphia*, 2010 WL 235110, *6 (E.D. Pa. Jan. 14, 2010) (Rufe, J.) (denying § 1292(b) certification where discovery was "long completed" and the case was "ready for trial").

[15] *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2011). (*See* Plaintiff's Mem. of Law in Supp. of Mot. for Entry of Judgment and Certification for Appeal at 10-12.) Further, though the Lundy Defendants claim the Third Circuit has "repeatedly held" that antitrust cases are appropriately dismissed at the pleading stage, the cases they cite do not help the Court. In two of the opinions, antitrust claims were dismissed because the plaintiffs lacked antitrust standing – a point not at issue here. *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223 (3d Cir. 2013); *SigmaPharm, Inc. v. Mut. Pharm. Co.*, 454 F. App'x 64 (3d Cir. 2011). In the sole post-*Queen City Pizza* case Defendants were able to cite where an antitrust claim was dismissed because (among other irrelevant reasons) the market definition was not adequately pled, the *pro se* plaintiff's proposed market was the "worldwide market for the investigation of the causes and treatment of cancer." *Andela v. Am. Ass'n for Cancer Research*, 389 F. App'x 137 (3d Cir. 2010). Pitt's plausible market definition (correctly read) is nothing like the implausible one in *Andela*.

Oral argument is requested.


November 17, 2014

/s/ Carl W. Hittinger
Carl W. Hittinger (30250)
Jeffry W. Duffy (81670)
Baker & Hostetler LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA  19104-2891
Telephone:   215.568.3100
Facsimile:    215.568.3439

Attorneys for Plaintiff
LARRY PITT & ASSOCIATES

11

## CERTIFICATE OF SERVICE

I, Carl W. Hittinger, hereby certify that on November 17, 2014, I caused the foregoing

Plaintiff's Reply Memorandum of Law in Support of Motions for Reconsideration and for Entry

of Final Judgment and Certification for Appeal to be served electronically upon the following

persons.

> Robert C. Heim, Esquire
> Carolyn M. Hazard, Esquire
> Brian P. Savage, Esquire
> Dechert LLP
> Cira Centre
> 2929 Arch Street
> Philadelphia, PA  19104-2808
>
> *Attorneys for Defendants Lundy Law, LLP and L. Leonard Lundy*

I also caused the same to be served by first-class mail upon the following person.

> Linda Bechutsky, Esquire
> Associate General Counsel
> Titan Outdoor LLC
> 100 Park Avenue, Suite 610
> New York, NY 10017
>
> *Attorney for Defendant Titan Outdoor LLC*

_/s/ Carl W. Hittinger_

Carl W. Hittinger