IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY PITT & ASSOCIATES,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 13-2398** |
| | : | |
| **LUNDY LAW, LLP,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                            **February 28, 2017**

The law firm of Larry Pitt & Associates ("Pitt") brought this action against the law firm of Lundy Law, LLP, and its managing partner L. Leonard Lundy, Esq. (collectively "Lundy Law" or "Defendants"), alleging federal and state trademark violation and unfair competition claims. Following motion practice by the parties, the Court dismissed multiple claims and defendants. Twenty-one months after filing a second amended complaint, Pitt filed the instant motion for leave to file a third amended complaint. For reasons that follow, the motion will be denied.

## I.      BACKGROUND

### A.  Factual Background

The underlying facts in this case are well known to the parties and have been recounted in the Court's prior opinions.[1] Plaintiff Pitt has its office in Philadelphia and provides representation to clients in the greater Philadelphia region primarily in the areas of personal injury, social security disability, and workers' compensation law. Defendant Lundy Law is a Pennsylvania-based law firm with offices in Pennsylvania, New Jersey, and Delaware. Lundy Law advertises that it provides representation to individuals pursuing personal injury, social

---

[1] The Court incorporates the recitation of facts set forth in the Court's September 30, 2014 Opinion.

security disability, and workers' compensation claims.

As alleged in the second amended complaint ("SAC"), people seeking to retain a lawyer in the areas of personal injury, social security disability, and workers' compensation select their lawyers based on brand name recognition or recall.  Law firms like Pitt and Lundy Law therefore seek advertising opportunities which provide mass reach, constant messaging, and saturation. According to Pitt, the most highly coveted advertising venues are: 1) on bus exteriors; 2) radio time slots before and after traffic and weather updates; and 3) inside sports arenas.

For about ten years, Pitt purchased advertising space on the exteriors and interiors of Southeastern Pennsylvania Transportation Authority ("SEPTA") buses and trains, as well as on SEPTA bus stops.  SEPTA advertisements are sold by Titan Outdoor LLC ("Titan"), an advertising firm.  Defendant L. Leonard Lundy's daughter, Sara Lundy, has been an Account Executive at Titan since March 2011, and is responsible for selling advertisements for SEPTA.

Since approximately January 2012, Lundy Law has had the exclusive right to advertise legal services on the outside of SEPTA buses, pursuant to one-year contracts with SEPTA which are renewable indefinitely.  In consideration for this exclusive right, Lundy Law paid an "unusually high" advertising fee, above the market prices SEPTA typically charges for such advertising space. Pitt and other law firms are not foreclosed from purchasing advertising space inside SEPTA buses and trains and on SEPTA bus stops, but are allegedly foreclosed by terms of Lundy Law's exclusive contracts with SEPTA from advertising on bus exteriors or from entering into their own exclusive contracts with SEPTA.  Pitt also alleges that Sara Lundy gave her father access to competitively sensitive information, as she was the point person for advertising sales for Pitt and other law firms.[2]

---

[2] In addition to the SEPTA contract, Pitt alleges that Lundy Law paid above market rates to obtain exclusive contracts to advertise on the exterior of Berks County, Pennsylvania buses, New Jersey Transit buses, and Delaware Transit buses, as well as an exclusive contract for rush hour advertising slots on KYW radio.

Pitt alleges that, in order to pay the advertising fees, Lundy Law charges its clients higher contingency fees (as high as 45%), demands cash referral fees from doctors to whom Lundy Law refers clients, and enters into agreements with "co-conspirator" law firms, pursuant to which the co-conspirator law firms contribute to Lundy Law's advertising budget and pay referral fees in exchange for client referrals.  Lundy Law then runs ads for legal services that it does not provide, such as representation in social security and workers' compensation cases, and refers those cases to the "co-conspirator" law firms.  This conduct allows Lundy Law to maintain its dominance in the legal market, and Pitt has allegedly suffered a decrease in net income because of the aforementioned activities.

### B.  Procedural History

Pitt initiated this action on May 2, 2013, asserting antitrust, unfair competition, and tortious interference claims against Lundy Law, LLP and L. Leonard Lundy.  Pitt voluntarily dismissed its complaint after Defendants moved to dismiss, and filed an amended complaint on August 12, 2013.  In the amended complaint, Pitt alleged federal antitrust claims under the Sherman Act and trademark claims under the Lanham Act.  Pitt also alleged state law claims of unfair competition, tortious interference, abuse of process, and wrongful use of civil proceedings under the Dragonetti Act.  Defendants moved to dismiss the amended complaint, and the Court granted the motion in substantial part.[3]  Pitt then filed a second amended complaint ("SAC"), again alleging Sherman Act and state law claims, and Defendants moved to dismiss most of the claims.  Thereafter, the Court dismissed the antitrust and tortious interference claims with prejudice, noting that additional factual allegations set forth in the SAC failed to correct the

---

[3] The Court found that two of Pitt's claims were adequately pled: a Lanham Act claim and a Dragonetti Act claim. The Court dismissed the remaining seven claims without prejudice.

deficiencies identified in the Court's prior decision.[4]  The Court permitted the following claims

to proceed:

1.  Violation of the Lanham Act based on Lundy Law's alleged false advertisements for certain types of legal services and subsequent referrals to other law firms for a fee;

2.  Violation of the Dragonetti Act based on Lundy Law filing a trademark lawsuit against Pitt without probable cause, causing financial harm to Pitt; and

3.  Common law unfair competition claim based on Lundy Law's alleged false advertisements and gathering of information about their competitors from Sara Lundy.

Discovery had been ongoing, being originally scheduled to conclude on February 8,

2016, but was stayed after Pitt's former counsel filed a motion to withdraw on October 8, 2015.

An amended discovery schedule was put in place on June 17, 2016.  Pitt filed its motion for

leave to file a third amended complaint on October 31, 2016.  Pursuant to the most recent

amended discovery schedule, discovery concluded on January 15, 2017.[5]  On January 30, 2017,

Pitt filed a motion for sanctions, alleging that Defendants had shared copies of Pitt's motion for

leave to file a third amended complaint, which was filed under seal, with counsel for proposed

additional defendants.[6]

## II.      STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure permits amendment of pleadings with

leave of court, and directs that courts "should freely give leave when justice so requires."[7]  A

court may deny leave to amend where (1) there has been undue delay; (2) substantial prejudice

would result; (3) the moving party has demonstrated repeated failure to cure deficiency by

---

[4] Doc. Nos. 65, 66.

[5] Doc. No. 159.

[6] By separate order, the Court has denied the motion for sanctions.

[7] Fed. R. Civ. P. 15(a).

amendments previously allowed; (4) an amendment would be futile; or (5) the court finds bad faith or dilatory motive by the moving party.[8]

Amendment is futile if a proposed amended complaint is "frivolous or advances a claim or defense that is legally insufficient on its face."[9]  "However, given the liberal standard for the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile."[10]  A court may deny a request for leave to amend based on futility only where the complaint, as amended, would fail to state a claim upon which relief could be granted.[11]  In determining whether the proposed amendment states a plausible claim, the court must consider only those facts alleged in the proposed amended complaint, accepting the allegations as true and drawing all logical inferences in favor of the plaintiff.[12]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations and a proposed amended complaint must contain "enough facts to state a claim to relief that is plausible on its face."[13]

## III.    DISCUSSION

Pitt seeks leave to amend the complaint to add claims, add parties, and expand previous arguments, purportedly based on new information that came to light in discovery.  The proposed TAC includes the following "new" evidence.  First, Francis Bass, a former Lundy Law

---

[8] *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)).

[9] *Thomas v. SmithKline Beecham Corp.*, No. 00-2948, 2002 WL 32351172, at *3 (E.D. Pa. Sept. 5, 2002).

[10] *Aruanno v. New Jersey*, No. CIV. A. 06-0296 WJM, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009).

[11] *Anderson v. City of Philadelphia*, 65 F. App'x 800, 801 (3d Cir. 2003).

[12] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Farzan v. United Parcel Serv., Inc.*, No. 10-1417, 2011 WL 3510860, at *1 (D.N.J. Aug. 8, 2011); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 570 (2007).

employee, recently pleaded guilty to falsifying tax returns related to kickbacks received from doctors and investigators for client referrals, and declined to answer various questions related to Lundy Law at his deposition in this case.  Second, the TAC cites newly discovered referral agreements between Lundy Law and two other law firms.  Third, the TAC references evidence that other law firms contributed large sums to "augment [] the Lundy Law brand" through advertisements in exchange for client referrals.[14]  Fourth, the TAC alleges that Lundy Law lied about being the only firm offering a "no fee guarantee" when this practice was actually commonplace.  Finally, Pitt claims that, when this lawsuit was filed, Lundy Law hired a lawyer to work on a few social security cases per month to refute Pitt's claim that Lundy Law's advertising is misleading.

The new Defendants Pitt seeks to add are Mr. Bass; the law firms of Pond Lehocky, Stern & Giordano, LLP ("Pond Lehocky") and Crumley Roberts, LLP; the advertising firm of Intersection Media, LLC (f/k/a Titan Outdoor, LLC) ("Titan");[15] Sara Lundy; and the Estate of Marvin Lundy (Leonard Lundy's uncle and longtime leader of Lundy Law).

The TAC also adds four new claims—two RICO claims and two civil conspiracy claims—and expands the existing Lanham Act and unfair competition claims.  Pitt's causes of action would be amended to state the following seven claims:

1. Count I (Lanham Act violations for false advertising) would include additional allegations and add the Estate of Marvin Lundy, Pond Lehocky, and Crumley Roberts as Defendants;

2. Count II (unfair competition based on deceptive advertising) would include additional allegations and add the Estate of Marvin Lundy, Pond Lehocky, and Crumley Roberts as Defendants;

---

[14] Doc. No. 144 at 18.

[15] Titan was named as a Defendant in the SAC, but was terminated pursuant to the Court's September 30, 2014 Opinion, which dismissed with prejudice the Sherman Act antitrust claims asserted in the SAC.

3. Count III would make a new allegation of civil conspiracy to deceptively advertise against existing Defendants Lundy Law, LLP and L. Leonard Lundy and new Defendants Estate of Marvin Lundy, Pond Lehocky, and Crumley Roberts;

4. Count IV (unfair competition based on misuse of competitive proprietary information) would include additional allegations and add Sara Lundy and Titan as Defendants;

5. Count V would make a new allegation of civil conspiracy to misuse competitive proprietary information against existing Defendants Lundy Law, LLP and L. Leonard Lundy and new Defendants Sara Lundy and Titan;

6. Count VI (Dragonetti Act violations) against Lundy Law, is identical to the claim alleged in the SAC;

7. Count VII would make a new allegation of RICO violations against L. Leonard Lundy, Estate of Marvin Lundy, Pond Lehocky, Crumley Roberts, and Francis Bass; and

8. Count VIII would make a new allegation of conspiracy to engage in RICO violations against L. Leonard Lundy, Estate of Marvin Lundy, Pond Lehocky, Crumley Roberts, and Francis Bass.

For the reasons that follow, the Court finds ample justification for denying leave to amend.

## A. Prejudice

First, Defendants argue that Pitt's proposed amendment would be prejudicial. In the Third Circuit, "prejudice to the non-moving party is the touchstone for the denial of an amendment."[16] "Prejudice means 'undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactics or theories on the part of the other party.'"[17] "The non-moving party has the burden of demonstrating such prejudice."[18] More specifically, courts consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend

---

[16] *Cummings v. City of Philadelphia*, No. CIV. A. 03-0034, 2004 WL 906259, at *3 (E.D. Pa. Apr. 26, 2004), *aff'd*, 137 F. App'x 504 (3d Cir. 2005) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993)).

[17] *Id.* (quoting *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969)).

[18] *The Pep Boys--Manny, Moe & Jack v. Safeco Corp.*, No. 04-CV-5723, 2005 WL 3120265, at *2 (E.D. Pa. Nov. 21, 2005).

against new facts or new theories."[19]

> In *Cureton v. National Collegiate Athletic Association*, the Third Circuit stated:
>
> [T]he District Court, when it denied plaintiffs' post-judgment motion to amend, cited four reasons why plaintiffs' delay was undue: (1) the motion was filed three years after the complaint was filed; (2) the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend; (3) judicial efficiency would be damaged by trying claims seriatim; and (4) the interest in the finality of the proceedings would be compromised by amendment. Furthermore, the District Court examined plaintiffs' asserted reasons for the delay in seeking amendment and determined that no "reasonable explanation" existed to overlook the delay.[20]

The Third Circuit found the district court's reasoning appropriate, and found "no reason to disturb its judgment."[21]  Although this case does not involve a post-judgment motion to amend, the analysis in *Cureton* nonetheless provides valuable guidance.

First, the motion for leave to amend was filed nearly three-and-a-half years after the original complaint was filed in 2013.  Fact discovery closed on January 15, 2017.  Defendants argue that if the motion is granted they will have to begin discovery anew, with "little prospect" the matter will be resolved in the foreseeable future.[22]  Indeed, allowing amendment in this case would prompt a new wave of discovery based on the additional allegations and Defendants.  This new, broader-ranging discovery would likely touch upon areas in which the Court previously foreclosed discovery.  Also, as discussed more thoroughly below, the factual bases for the proposed amended complaint were largely known to Pitt when the SAC was filed in January 2014.  Granting leave to amend would undermine judicial efficiency by significantly delaying resolution of the case.  For these reasons, allowing a change in tactics and theories at this late

---

[19] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[20] *Id.* at 273-74 (footnote omitted).

[21] *Id.* at 276.

[22] Doc. No. 151 at 10.

stage would be unfair and prejudicial to both Defendants and the administration of justice, and for this reason alone denial of amendment is appropriate.[23]

## B.  Undue Delay

Defendants next contend that granting Pitt's Motion would cause undue delay.  Delay alone does not justify denying leave to amend; the delay must be undue, and the Third Circuit in evaluating whether delay is undue has "focus[ed] on the movant's reasons for not amending sooner."[24]  "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier."[25]  In evaluating undue delay, courts balance the reasons for not amending sooner against the burden of delay on the Court.[26] "In particular, a district court may deny leave to amend a pleading where the moving party has: (1) failed to utilize previous opportunities to amend; and (2) has not offered any explanation for this failure."[27]

Defendants argue that Pitt could have added the proposed new claims earlier, and its failure to do so is "the very definition of undue delay."[28]  They insist that there is no "justification for Pitt having waited more than two years to ask this Court's permission to recast the rejected antitrust claims as RICO, civil conspiracy, expanded Lanham Act, and expanded unfair competition claims."[29]  They further argue that any "new" information propounded by Pitt is not actually new and either has already been pleaded or was known to Pitt at the time of earlier

---

[23] *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (proposed amended complaint which came four months after the discovery of new information, and after the close of discovery, would unfairly burden the court and the opposing party).

[24] *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[25] *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 1556, 2006 WL 433891, at *1 (M.D. Pa. Jan. 3, 2006).

[26] *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988).

[27] *AMS Const. Co. v. Reliance Ins. Co.*, No. CIVA 04-CV-02097, 2006 WL 1967336, at *2 (E.D. Pa. July 12, 2006).

[28] Doc. No. 151 at 8.

[29] *Id.* at 7.

9

amendments.

Pitt denies that the delay has been undue, arguing that the proceedings had been "placed on hold" when its former counsel moved to withdraw and discovery did not truly begin until June 2016.[30]  Additionally, Pitt notes that the parties stipulated to a discovery schedule that provided Pitt an opportunity to file a motion for leave to amend.  Therefore, argues Pitt, the procedural history of the case shows that its motion was timely filed and that any delay resulting from amendment is not undue.[31]  Pitt also states that, should the Court deny its motion, it will file the new claims in a separate action.  Therefore, argues Pitt, denying its motion would be contrary to the interests of judicial economy.

Delays similar to the one here have been found to justify denying leave to amend, especially where facts added in the proposed amendment were known to the movant earlier.[32] Regardless of discovery interruptions or stipulations for extensions of time to request leave to add or drop parties, Pitt could have sought leave to amend earlier.  Not only was the majority of the information in the TAC previously available to Pitt, but some already has been pleaded and rejected by the Court.

First, the guilty plea of Mr. Bass only brings specifics to Pitt's earlier allegations that Defendants engaged in "illegal, fraudulent and unethical conduct" involving payments from

---

[30] Doc. No. 157 at 2.

[31] *See id.* at 2-5.

[32] *See, e.g., Cureton*, 252 at 269 (denying motion for leave to file second amended complaint where motion was filed three years after the original complaint and was based on factual information known to the plaintiff for over two years); *Loren*, 1 F.3d at 1414 (denying leave to amend where motion was filed three years after the original complaint and almost two years after the second amended complaint); *Tri-Realty Co. v. Ursinus Coll.*, No. CV 11-5885, 2015 WL 8312660, at *5 (E.D. Pa. Dec. 9, 2015) (quotation omitted) ("Allowing Tri-Realty to amend its complaint yet again . . . would place an unwarranted burden on the court."); *cf. Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Arthur's [eleven-month] delay was neither so egregious nor unexplained as to warrant refusal of leave to amend.").

doctors.[33]  What Mr. Bass did or did not testify to in his deposition does not change this.

Second, regarding the law firms Pitt seeks to add as Defendants, the SAC referenced Lundy Law's agreements with "advertising partners" and "co-conspirator law firms" for referrals in exchange for abstaining from purchasing competing advertisements, and, although Crumley Roberts was not specifically named in prior filings, Pitt did identify Pond Lehocky as one of the "advertising partners."[34]  Pitt did not, however, seek to add Pond Lehocky as a defendant in the SAC.

Third, as to Pitt's allegation that Lundy Law falsely advertised that it was the only firm offering a "no fee guarantee," Pitt attaches to the TAC an undated advertisement promoting the slogan.  Pitt also alleges that this advertising tactic was employed by Marvin Lundy, who passed away in 2011.  The fact that Lundy Law touted itself as the only law firm offering a "no fee guarantee" was advertised publicly at least as early as 2011, and this information cannot be considered new.

Fourth, Pitt offers "new" evidence that "following the filing of Pitt's initial amended complaint in August 2013, Lundy Law, through the auspices of Leonard Lundy, retained an attorney, acting as an independent contractor, who had NO firm responsibilities, other than to handle up to five social security disability claims per month in an 'of counsel' capacity in an effort to concoct an argument for use in this litigation that its advertising was not literally false."[35]  As Pitt states, the hiring allegedly occurred following the filing of the first amended complaint in 2013.  This evidence cannot be considered new because the information ostensibly has been available on Lundy Law's website since the attorney began working for Lundy Law.

---

[33] *See* FAC ¶ 121; SAC ¶ 6.

[34] *See* SAC ¶¶ 165-174.

[35] Doc. No. 144 at 11.

Pitt also seeks to add Sara Lundy and Titan as Defendants.  In the SAC, Pitt pleaded extensive facts involving both Sara Lundy and Titan, and Titan was previously named as a Defendant but was dismissed along with Pitt's defective antitrust claims.  Therefore, the addition of these two Defendants could have—and, in Titan's case, did—come earlier.

Balancing the reasons for not amending sooner against the burden of delay on the Court, as the Court is required to do, Pitt has done little to rationalize its burdensome and extensive delay.  Pitt has had two opportunities to amend, and it could have included additional allegations and parties then.  Pitt has not offered sufficient explanation for its failure to do so.  Thus, in addition to causing prejudice, the Court finds that the delay is undue.

### C. Futility of Proposed Additional Claims

Third, Defendants argue that any new claims or amendment to current claims would be futile.  As discussed above, assessment of futility requires the Court to determine whether the claims Pitt proposes to add would fail to state a claim.[36]  The Court will discuss the proposed additional claims seriatim.

### i. RICO Claims

To state a § 1964(c) RICO claim, "a plaintiff must allege four elements: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts."[37]  Defendants

---

[36] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted" and courts assess futility under Rule 12(b)(6) standard).

[37] *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 315 (D.N.J. 2011) (citation omitted); *see also* 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

primarily argue that Pitt's proposed RICO claim fails because he has not adequately alleged a loss redressable by RICO.

To have standing under RICO, a plaintiff's "business or property" must have been "injured" "by reason of" the defendant's RICO violation.[38]  It is not enough that a plaintiff merely show that the alleged RICO violation was a "but for" cause for its injury.[39]  A plaintiff must show proximate cause, which requires a "direct relation between the injury asserted and the injurious conduct alleged."[40]  The Supreme Court has held that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."[41]

In the TAC, Pitt alleges that it lost revenue and clients because of Lundy Law's alleged misconduct (which resulted in clients retaining other lawyers instead of Pitt).  Pitt maintains that it has standing to bring this RICO claim because "[t]he loss of clients and revenue suffered by plaintiff was the direct result of the RICO scheme" and this injury is neither too remote nor too speculative to confer standing.[42]  Pitt alleges that, because of Defendants' alleged racketeering activities, Pitt has "directly and proximately suffered substantial injury . . . including but not limited to, diminished revenues because of lost or reduced social security disability and workers' compensation recoveries, and irreparable loss of goodwill and business opportunities with customers and prospective clients."[43]  In other words, because of Defendants' conduct, Pitt lost

---

unlawful debt.").

[38] 18 U.S.C. § 1964(c).

[39] *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) (quoting *Holmes v.Secs. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992).

[40] *Id.*

[41] *Holmes*, 503 U.S. at 269.

[42] Doc. No. 157 at 6.

[43] TAC ¶ 518.

potential clients and legal fees.

Pitt lacks standing to bring a RICO claim because its allegation that it lost revenue based on Lundy Law's conduct is too tenuous to show direct injury.[44]  The facts alleged in the TAC would require the Court (or a factfinder) to make several conceptual leaps in order to infer proximate cause.  First, Pitt's allegation assumes that prospective clients who sought out Lundy Law's services, thereby depriving Pitt an opportunity to represent them, even knew about Pitt.  Second, even if the prospective clients knew about Pitt, the allegation assumes that they would have chosen to hire Pitt, rather than another attorney, to represent them.  The allegation also assumes that Pitt would have agreed to take these potential clients' cases.  And, even had the potential clients chosen Pitt rather than Lundy Law, and even had Pitt agreed to represent the clients, the allegation assumes that the representation would have resulted in an award of fees.  That Pitt's allegation requires the Court to make these postulations demonstrates the difficulty in "ascertain[ing] the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."[45]  The alleged injury here is too speculative to support a RICO claim, and thus amendment to add a RICO claim would be futile.[46]

Even if Pitt had standing to bring a RICO claim, the claim would fail because the facts

---

[44] *See Holmes*, 503 U.S. at 268 (RICO requires a showing of proximate cause, which demands a "direct relation between the injury asserted and the injurious conduct alleged"); *see also id.* at 269 (proximate cause lacking where it is difficult to distinguish amount of plaintiff's damages attributable to the alleged violation, as opposed to other independent factors).

[45] *Id.* at 269.

[46] Pitt argues that any purported shortcomings in its RICO claims are "merely a question of disputed material fact" and will be more properly raised by Defendants later in the litigation.  Doc. No. 157 at 7.  Pitt is mistaken; courts are required to assess causation at the pleadings stage and routinely dismiss RICO claims because the alleged injury is too remote.  *See, e.g., Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 933 (3d Cir. 1999) (upholding dismissal of RICO claims against tobacco companies to recover costs of smoking-related illnesses where the "causation chain [was] much too speculative and attenuated to support a RICO claim" because injury depended on various factors such as smokers' other health problems and smokers ignoring health warnings); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 433, 444 (3d Cir. 2000) (upholding dismissal of RICO claim because proximate cause was lacking where injury was too remote and damages were too speculative, and directness involved the same questions as in *Steamfitters*); *Mehling v. N.Y. Life Ins. Co.*, 413 F. Supp. 2d 476, 477 (E.D. Pa. 2005) (granting motion to dismiss RICO claims because complaint failed to show proximate cause).

alleged are insufficient to state a plausible claim. Pitt has not adequately pleaded predicate acts of racketeering. A RICO plaintiff must cite predicate acts which are specifically enumerated in 18 U.S.C. § 1961. Wire fraud and mail fraud, while specifically enumerated in the statute, have not been pleaded with particularity as required under Federal Rule of Civil Procedure 9(b).[47] "In the context of RICO mail fraud allegations, this means that the complaint must 'identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation.'"[48] "Put another way, the 'who, what, when and where details of the alleged fraud' are required."[49]

Pitt alleges, *inter alia*, "[e]ach of the RICO Defendants committed numerous predicate acts in the nature of knowingly fraudulent communications by wire" and that "[t]he RICO Scheme began as early as 2006, and continued at least through 2013, and involved various different groupings of the RICO Defendants over the years."[50] The TAC does not plead mail and wire fraud with particularity. Pitt has not clearly identified the details of the alleged fraudulent transactions, such as the specific time, place, and contents of the alleged fraud, or how

---

[47] Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

[48] *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (citation omitted).

[49] *Id.*

[50] TAC ¶¶ 298, 314; *see also, e.g.,* TAC ¶ 318 ("The efforts by Marvin Lundy in furtherance of the RICO Scheme were accomplished through, *inter alia*, electronic mail, the internet, U.S. mail, facsimile and interstate telephone wires."); TAC ¶ 331 ("At the direction, control and approval of Leonard Lundy, Lundy Law was repeatedly invoiced by various entities for payments for the False Advertisements through, *inter alia*, electronic mail, the internet, U.S. mail, facsimile and interstate telephone wires."); TAC ¶ 349 ("At the direction, control and approval of Pond Lehocky, Pond Lehocky paid Lundy Law for the underlying costs of the False Advertisements through, *inter alia*, electronic mail, the internet, U.S. mail, facsimile and interstate telephone wires, which Pond Lehocky knew would be used by Lundy Law to continue to falsely advertise, build Lundy Law's brand and secure a much larger audience of Deceived Clients for its False Advertisements."); TAC ¶ 523 ("Since, as early as 2006, in various manners and efforts, Marvin Lundy, Leonard Lundy, Pond Lehocky, Crumley Roberts and Bass cooperated jointly and severally in the commission of two (2) or more of the overt predicate acts, namely the use of the United States mail and interstate wires, that are itemized in 18 U.S.C. § 1961(1)(A) and (B), in order to effectuate the RICO Scheme.").

the transactions were false and misleading.  Accordingly, Pitt's RICO claim fails on this basis as well.[51]

Because Pitt's proposed RICO claim is substantively inadequate, it follows that the RICO conspiracy claim also fails.[52]  Thus, amending the complaint to add the RICO claims alleged in Counts VII and VIII would be futile.

### ii.   Civil Conspiracy Claims

In the TAC, Pitt alleges two new counts of civil conspiracy against existing and new defendants.  "To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."[53]  Civil conspiracy claims also require proof of malice.[54]  Malice, in turn, requires a showing that the sole purpose of the conspiracy was to injure the plaintiff.[55]

Defendants argue that the proposed civil conspiracy claims fail because Pitt has not shown that the sole purpose of the conspiracy was to injure Pitt.[56]  Pitt disagrees, arguing it is not required to show that the sole purpose of the conspiracy was to harm Pitt.[57]   However,

---

[51] Defendants also argue that the RICO claim fails because Pitt has not sufficiently pleaded involvement by Leonard Lundy in the scheme.  Inasmuch as the Court finds that Pitt lacks RICO standing and has failed to plead predicate acts with specificity, it will not address the other grounds for futility of the RICO claim.

[52] *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (citation and quotation omitted) ("A RICO conspiracy claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'").

[53] *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

[54] *Id.*

[55] *Barker v. Hostetter*, No. CIV. A. 13-5081, 2014 WL 1464319, at *30 (E.D. Pa. Apr. 15, 2014).

[56] *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015) (requiring a showing of malice in civil conspiracy claim, stating "bald assertions that certain actions were malicious are insufficient; it must be alleged that the sole purpose of the conspiracy was to injure the plaintiffs.").

[57] Pitt relies on *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 455 n.4 (E.D. Pa. 2014), which stated in a footnote that *Thompson* "actually requires a plaintiff to prove an 'intent to injure' that lacks 'justification,' before noting that the issue was irrelevant to the plaintiff's claim.  However, *Ozburn-Hessey* also quotes this Court in holding that "'[i]t must be shown that the *sole* purpose of the conspiracy was to injure the plaintiffs. This necessary proposition is negated by a showing that the acts alleged were done for professional or business benefit.'"  *Id.* (quoting *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009)).

Pennsylvania law requires otherwise.  As the Third Circuit has held, "'[p]roof of malice is an essential part of a cause of action for conspiracy,' and malice requires that the conspirators act with the sole purpose of injuring the plaintiff."[58]  "This necessary proposition is negated by a showing that the acts alleged were done for professional or business benefit."[59]

Pitt alleges in Count III that Lundy Law and others "combined and agreed with malicious intent to harm Pitt and to engage in unlawful overt acts and achieve objectives by the unlawful means described above in the preceding count and elsewhere herein, all to the intended financial detriment of Pitt,"[60] and in Count V that Lundy Law and others "combined and agreed with malicious intent to harm Pitt and to engage in unlawful overt acts and achieve objectives by the unlawful means described above, all to the intended financial detriment of Pitt, including without limitation the following: (i) entering into anti-competitive Exclusive Advertising Contracts achieved as a result of the sharing and improper disclosure of competitive proprietary information; and (ii) wrongfully obtaining the competitive information of Lundy Law's competitors from the Titan Defendants for use in acquiring access to and securing a competitive advantage over those advertising strategies of Pitt."[61]

At no point in the TAC does Pitt allege that the sole purpose of the alleged conspiracy was to injure Pitt.  Pitt claims that Defendants conspired with malicious intent, but this

---

[58] *Sarpolis v. Tereshko*, 625 F. App'x 594, 601 (3d Cir. 2016) (quoting *Goldstein v. Phillip Morris, Inc.,* 854 A.2d 585, 590 (Pa. Super. Ct. 2004)); *see also Barker*, 2014 WL 1464319, at *31 (granting motion to dismiss where "[a]t no point in the Amended Complaint [did] Plaintiffs expressly state that the sole purpose of the conspiracy was to injure them."); *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 313 (E.D. Pa. 2008) (dismissing a civil conspiracy counterclaim because the defendant failed to produce any evidence of malice: although defendants were aware their actions would cause harm to the plaintiff, their specific intent was not solely to harm the plaintiff); *Spitzer v. Abdelhak,* No. CIV. A. 98–6475, 1999 WL 1204352, at *9 (E.D. Pa. Dec.15, 1999) ("As Plaintiffs have stated elsewhere, the Defendants' purpose of the conspiracy was to benefit themselves personally and professionally. The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs.").

[59] *Bro-Tech Corp.*, 651 F. Supp. 2d at 419.

[60] TAC ¶ 479.

[61] TAC ¶ 496.

conclusory allegation does not satisfy the requirement under Pennsylvania law.  Pitt's case is

"built on the theory that Defendants acted for their business advantage and benefit," and "[o]ne

consequence of this approach is that a civil conspiracy claim is not now tenable because

Plaintiffs' evidence belies the notion that Defendants acted without a business motive, but purely

out of malice."[62]  That Defendants allegedly harmed Pitt in the process of achieving their

business motives, even if maliciously, is not enough to make out a civil conspiracy claim.

Accordingly, this new claim would also be futile.

### iii.  Expansion of Existing Claims

As noted above, Pitt seeks to expand its existing unfair competition and Lanham Act

claims by adding new allegations and parties.  In arguing that Pitt's proposed expansion of

existing claims would be futile and improper, Defendants assert that the Court has already

rejected the theories of liability on which Pitt now relies.

First, regarding unfair competition, these claims are in essence an attempt to reassert

claims that the Court already dismissed with prejudice.  In the proposed Count II, Pitt adds

allegations that Defendants accepted illegal cash payments from doctors in exchange for the

referral of clients.  In the proposed Count IV, Pitt adds allegations that, among other things, Titan

gave Lundy Law exclusive advertising opportunities not offered to competitors of Lundy Law.[63]

In its September 30, 2014 Opinion, the Court allowed Pitt's unfair competition claims to proceed

in large part, but rejected substantially similar theories to the ones Pitt attempts to assert here.[64]

---

[62] *Id.*  For example, Pitt states in the SAC: "The concerted intent of Defendants and others in seeking to funnel all prospective clients into Lundy's intake process is not to compete on the merits, but rather, to reduce or eliminate competition in the relevant market for legal services by diverting business to a single law firm, Lundy Law, LLP, so that Lundy serves as the de facto clearinghouse for nearly all inquiries made by prospective clients in the relevant market for legal services."  SAC ¶ 10.

[63] TAC ¶ 487.

[64] *See* Doc. No. 65 at 15-16 ("The Court will not permit Pitt to proceed with the claim that Lundy Law's demand for referral payments from doctors constituted unfair competition, as [] Pitt has not adequately alleged that this conduct

Because the Court will not permit Pitt to reintroduce previously rejected theories into the case, this claim would be futile.

Second, Pitt's new Lanham Act allegations concerning Lundy Law's "no fee guarantee" advertisements and referral agreements with advertising partners are improper. Pitt argues that expansion of its Lanham Act claim is necessary based on newly adduced evidence. As discussed above, this "new" evidence regarding no fee guarantees and referral agreements cannot be considered new, and is inappropriate at this stage given Pitt's previous opportunities to amend the complaint. To the extent Pitt seeks to assert new theories, allowing amendment to do so would cause prejudice and unduly delay this litigation.

**D.  Failure to Cure Deficiencies**

Finally, Defendants argue that Pitt has squandered previous opportunities to cure deficiencies in the complaint. Indeed, in ruling on the motion to dismiss Pitt's SAC, the Court noted that "the additional factual allegations set forth in the SAC generally fail to correct the pleading deficiencies" identified in the Court's prior opinion, and dismissed four of Pitt's claims with prejudice.[65] Pitt contends that prior amendments were distinct because they largely related to antitrust claims that have since been dismissed with prejudice. Defendants counter that the instant motion is merely an attempt to circumvent the Court's prior rulings dismissing Pitt's antitrust claims, and that the TAC would "reinject into the case factual allegations which formed the basis for claims this Court dismissed with prejudice more than two years ago."[66] As

---

involved any misappropriation from Pitt, any misrepresentation about Pitt (or Lundy Law), or any injury to Pitt's reputation, manner of doing business, or commercial relations."); *id.* at 16 ("[T]he Court will not permit Pitt to proceed with the claim that Lundy Law's long-term exclusive advertising contracts constitute unfair competition. As pled, these contracts do not violate federal antitrust laws, for the reasons outlined above, and, as they do not involve any misappropriation from or misrepresentations about Pitt, or injure Pitt's reputation, no other basis for state unfair competition liability applies.").

[65] *Id.* at 5.

[66] Doc. No. 151 at 1.

discussed above, a comparison of the SAC and the TAC reveals that the underlying facts supporting the two causes of action overlap substantially: many of the allegations involving the proposed new evidence and parties were pleaded in the SAC after the Court gave Pitt a second opportunity to amend.  Accordingly, Pitt has demonstrated an inability to cure deficiencies, and this is another factor supporting denial of leave to amend.[67]

## IV.    CONCLUSION

Amendment of Plaintiff's complaint for a third time is not warranted for the various reasons discussed above.  An appropriate Order follows.

---

[67] Defendants also argue that Pitt's motion to amend is evidence of bad faith or improper motive.  *See* Doc. No. 151 at 22 (alleging that Pitt is "casting about for some other theory of liability that might provide it a windfall in the form of treble damages, attorneys' fees, and/or punitive damages").  While courts have found bad faith based on undue delay, the Court does not find that Pitt's motion was filed in bad faith.  *See, e.g., Fisher v. Dominion Transmission, Inc.,* No. 4:12-CV-0484, 2015 WL 6166626, at *3 (M.D. Pa. Oct. 20, 2015) (quoting *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984)) ("Importantly, '[d]elay can itself be evidence of bad faith justifying denial of leave to amend' if the facts before the court demonstrate that such is the case.").