## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY PITT & ASSOCIATES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 13-2398** |
| | : | |
| | : | |
| **LUNDY LAW LLP,** *et al*. | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                        **February 15, 2018**

Plaintiff Larry Pitt & Associates and Defendant Lundy Law LLP are Philadelphia-area

law firms that advertise for personal injury, social security, and workers' compensation cases.

After Lundy filed and then withdrew a trademark infringement lawsuit against Pitt, Pitt filed this

suit against Lundy Law and its managing partner, L. Leonard Lundy (collectively, "Lundy"),

asserting wrongful use of civil proceedings, false advertising, and trade secret misappropriation.

Lundy moves for summary judgment on all claims. For reasons discussed below, Lundy's

motion will be granted.

## I.      BACKGROUND

In Pennsylvania, unlike in many other jurisdictions, an attorney or a law firm is

permitted to refer a case to another attorney or law firm and earn a portion of the clients' fees

without performing any work on the case, so long as the arrangement is disclosed to the client

and the fee is not excessive.[1] However, a law firm may not actively advertise in its own name

for certain categories of cases for the purpose of referring those cases to other law firms.[2] This

---

[1] *Compare* Pa. Disc. R. Prof. Conduct 1.5(e), *with* ABA Model Code DR 2-107.

[2] Pa. Disc. R. Prof. Conduct 7.2(k).

case requires the Court to determine whether, and under what circumstances, a law firm can obtain relief against such advertising practices by its competitor.

For years, Lundy Law, a personal injury law firm with offices in Philadelphia and surrounding counties in Pennsylvania, New Jersey, and Delaware, has advertised on television, public transit, and other media, using the slogan "Remember this Name" and its mnemonic hotline number 1-800-LUNDYLAW.[3] Since at least 2008, Lundy Law's advertisements have solicited workers' compensation and social security disability cases, among other categories of cases.[4]

Pitt is another Philadelphia-area law firm, which has, for many years, advertised for personal injury, workers' compensation, and social security disability cases.[5] At some point, Pitt began using the slogan "Remember this Number" in conjunction with its own mnemonic intake number.[6] On March 4, 2013, in a decision that set off the current legal battles between the two firms, Lundy Law sued Pitt for trademark infringement, but dismissed the suit voluntarily without prejudice on April 18, 2013.[7]

Pitt responded by filing this suit, asserting that Lundy Law's trademark suit was a wrongful use of civil proceedings in violation of Pennsylvania's Dragonetti Act.[8] Pitt's initial complaint also asserted that various aspects of Lundy Law's advertising campaign violated the Sherman Antitrust Act, the Lanham Act, and Pennsylvania common law prohibitions against tortious interference and unfair competition. After two amendments to the complaint and

---

[3] Stip. Facts (Doc. No. 169-1) ¶¶ 1, 2, 3; Pl.'s Exhs. 14, 16, 17.

[4] Stip. Facts ¶¶ 4, 5.

[5] *Id*. at ¶ 7-10.

[6] *Id*. at ¶ 11.

[7] *Id*. at ¶¶ 25, 31.

[8] 42 Pa. Cons. Stat. § 8351.

briefing on two motions to dismiss, the Court dismissed Pitt's Sherman Act and tortious interference claims with prejudice but allowed Pitt to proceed on 1) its false advertising claim under the Lanham Act (Count Five), 2) its common law unfair competition claims based on deceptive marketing and trade secret misappropriation (Count Six); and 3) its Dragonetti claim (Count Eight).[9]

Pitt's false advertising claim under the Lanham Act and deceptive marketing claim under Pennsylvania unfair competition law are both based on Lundy Law's extensive advertisements for workers' compensation and social security cases, which Lundy Law agreed to refer to certain other law firms in exchange for referral fees.   With respect to social security cases, between November 11, 2008 and February 2011, Lundy maintained an agreement with the Indiana-based law firm, Fleschner, Stark, Tanoos & Newlin, under which the two firms would share in the cost of Lundy Law's advertising for social security disability cases in the Philadelphia area, and Lundy Law would refer all of its potential social security disability cases directly to Fleschner in return for referral fees.[10]   Between March 2011 and October 31, 2013, Lundy Law had a similar referral and advertising agreement with the Pennsylvania-based law firm, Pond Lehocky.[11]   In 2013, shortly after the filing of this lawsuit, Lundy Law entered into yet another referral agreement with the Carolinas-based law firm of Crumley Roberts, under which Lundy referred most of its potential social security cases to Crumley in exchange for referral fees.[12]   However, at the same time, Lundy Law engaged a social security attorney, Michele Squires, as part-time "of counsel" to the firm to handle "up to five" social security cases a month.[13]

---

[9] *See* Mem. Op. and Order dated September 30, 2014 (Doc. Nos. 65, 66).

[10] Stip. Fact. ¶ 21; Pl.'s Exh. 48.

[11] Stip. Fact ¶ 22; Pl.'s Exh. 49.

[12] Stip. Fact ¶ 36; Pl. Exh. 51 at LUNDY-0006463.

[13] *See* Pl. Exhs. 45, 46.

With respect to workers' compensation cases, beginning sometime between 2009 and 2012, Lundy Law has maintained a referral agreement with the Law Offices of Lenard A. Cohen, P.C. ("LOLAC"), under which LOLAC subsidizes the cost of Lundy Law's workers' compensation advertisements, and Lundy Law refers all its potential workers' compensation cases in Pennsylvania to LOLAC in exchange for a referral fee.[14] However, while LOLAC has remained an independent firm, Lenard A. Cohen himself has been covered under Lundy Law's liability insurance policy as "of counsel" to the firm since 2009 and keeps Lundy Law business cards and a Lundy Law email address.[15] Since 2012, LOLAC's offices have also been physically located within Lundy Law's office in Philadelphia, and Mr. Cohen has attended Lundy Law attorney meetings and advertising meetings.[16]

Lundy Law's advertisements throughout this time vary in the specificity with which they solicit social security and workers' compensation cases.   Many are banners featuring 1-800-LUNDYLAW in large font with the words "Injury and Disability Lawyers" or "Injury, Disability & Workers' Compensation lawyers," in smaller font above or below the telephone number.[17] Some advertisements feature testimonials from purported social security disability or workers compensation clients that they were glad they "remembered the name."[18]

Some of Lundy Law's television commercials, however, specifically promote Lundy Law's purported services for workers' compensation and social security disability clients.  For example, a commercial aired between June 2012 and January 2013 displays the message "Lundy

---

[14] Pl. Exhs. 31-35; Pl.'s Exh. 4 at 133:16-135:6.

[15] Stip. Fact ¶¶ 15-17; Def. Exh. 11.

[16] Stip. Fact ¶¶ 18-19.

[17] Pl. Exhs. 14, 16.

[18] Pl. Exhs. 14, 16.

Law gets you the social security benefits you deserve" and features the following statement from Leonard Lundy:

> People should always apply for Social Security Disability Benefits. **We'll help you through the process. That's what we do**."[19]

Another commercial aired during the same period features a similar statement from Mr. Lundy:

> Social Security benefits are available to people because they have a physical or mental condition that makes it impossible for them to work. It's also available for people who have never worked. It's really a cumbersome process. **Our job is to get them the benefits after they've been denied. That's what we do**.[20]

As Mr. Leonard speaks, the following messages appear on the screen:

- Denied Social Security benefits?
- Lundy Law gets more than retirement benefits from Social Security.
- Lundy Law simplifies the Social Security process.
- Lundy Law gets the Social Security benefits you need.

Similarly, a workers' compensation commercial aired in 2015 and 2016 features Mr. Lundy telling viewers:

> Injured on the job? We're here to help. Call now to talk directly to a workers' compensation lawyer. **At Lundy Law, your own lawyer will guide you through every step of the process**.[21]

In addition, at least one of Lundy Law's paper advertisements specifically identifies "Social Security Disability" and "Workers' Compensation" as two of Lundy Law's "Practice Areas."[22]

Pitt asserts that all of these advertisements are false and misleading because Lundy intended to refer, rather than handle, any potential workers' compensation and social security cases.

Pitt's claim of unfair competition based on misappropriation of trade secrets focuses on a different aspect of Lundy Law's advertising campaign: specifically, Lundy Law's relationship

---

[19] Pl.'s Exh. 19 at LUNDY-0000090.

[20] *Id*. at LUNDY-0000092.

[21] Pl.'s Exh. 19 at LUNDY-0000096.

[22] *See, e.g*., Pl.'s Exh. 14 at LUNDY-0000032.

with Titan (now known as Intersection Media), the exclusive advertising company for the Southeastern Pennsylvania Transportation Authority ("SEPTA").[23]  For many years, Lundy Law has purchased advertising space on SEPTA buses, trains, and transportation stops, and throughout that time, Leonard Lundy's daughter, Sara Lundy, has been an account executive at Titan.[24]  In that role, she provided Lundy Law with photographs of advertisements used by other law firms and information on their locations as well as transit ridership information.[25]  Pitt alleges that these disclosures constituted misappropriation of confidential information concerning the advertising strategies of Lundy Law's competitors, including Pitt.

## II.    STANDARD OF REVIEW

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[26]  A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27]  A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[28]  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]

---

[23] Stip. Fact. ¶ 41.

[24] *Id*. at ¶ 42.

[25] *Id*. at ¶¶ 44-46.

[26] *Walden v. Saint Gobain Corp*., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[27] Fed. R. Civ. P. 56(a).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[29] *Id.*

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[30] Further, a court may not weigh the evidence or make credibility determinations.[31] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[32] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[33] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[34]

## III. DISCUSSION

Lundy moves for summary judgment on each of Pitt's remaining claims under the Lanham Act, Pennsylvania's unfair competition law, and Pennsylvania's Dragonetti Act. The Court will address each count in turn.

### A. Lanham Act (Count V)

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ."[35] To prevail on a Lanham Act claim for false advertising, a plaintiff must prove each of the following five elements:

> 1) that the defendant has made false or misleading statements as to
> his own product or another's, 2) that there is actual deception or a

---

[30] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[31] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted).

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[33] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[34] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[35] 15 U.S.C. § 1125(a)(1).

tendency to deceive a substantial portion of the intended audience,
3) that the deception is material in that it is likely to influence
purchasing decisions 4) that the advertised goods traveled in
interstate commerce, and 5) that there is a likelihood of injury to
the plaintiff in terms of declining sales, loss of good will, etc.[36]

To establish that the asserted injury falls within the "zone of interest" of the Lanham Act, and

thus entitles the plaintiff to relief under the statute, the plaintiff must show that its alleged injury

is "proximately caused" by the defendant's alleged misrepresentation.[37]

The Third Circuit has held, and the parties agree, that where a plaintiff can show that the

defendant's statements are not only misleading, but "literally false," the second element of

deception is presumed.[38]  If a plaintiff seeks only injunctive relief, courts in this circuit have

extended this presumption to the elements of materiality and likelihood of injury as well.[39]

However, if a plaintiff seeks monetary damages, it must provide some evidence that consumers

actually relied on the defendant's misrepresentation in order to establish the requisite causal link

between the defendant's illegal conduct and actual commercial injury suffered by the plaintiff.[40]

---

[36] *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).  Here, there is no dispute in this case that Lundy's advertisements "traveled in interstate commerce."

[37] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014) (citation omitted).

[38] *Pernod*, 653 F.3d at 248; Pl.'s Opp. at 4-5; Def.'s Reply at 12 n.10.

[39] *Smart Vent, Inc. v. Crawl Space Door Sys. Inc.*, No. 13-5691, 2017 WL 4948063, at *6 (D.N.J. Nov. 1, 2017); *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 729 (D. Del. 2011) ("[O]nce plaintiff proves literal falsity of an advertisement, the court may presume all other elements of the § 43(a) claim.") (citation omitted); *Ecore Int'l, Inc. v. Downey*, No. 12-2729, 2015 WL 127316, at *4 (E.D. Pa. Jan. 7, 2015) ("The presumption appears to cover materiality as well.").

[40] *Synygy, Inc. v. ZS Assocs., Inc.,* 110 F. Supp. 3d 602, 621 (E.D. Pa. 2015*)* ("[T]here are different standards of proof for different types of remedies under the Lanham Act . . . Where . . . a plaintiff seeks monetary damages, proof of actual deception is required.  This does not mean that plaintiff bears the burden of detailing individualized loss of sales; however, plaintiff must show some customer reliance on the false advertising.") (internal citations omitted); *see also Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017) ("To recover damages under the Lanham Act, [the plaintiff] must show not only false advertising by [the defendant], but also that [the defendant's] statements caused [the plaintiff] actual damages."); *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, No. CV 12-1615, 2017 WL 3671264, at *14 (E.D. Pa. Aug. 23, 2017) (holding that presumptions of deception and materiality do not apply when plaintiff seeks money damages); *Ecore Int'l, Inc. v. Downey*, No. 12-2729, 2015 WL 127316, at *4 (E.D. Pa. Jan. 7, 2015) (citing *Mun. Revenue Serv., Inc. v. Xspand, Inc.*, 700 F. Supp. 2d 692, 716 (M.D. 2010) (same); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 575 (E.D. Pa. 1999) (citation omitted) ("To show entitlement to monetary damages under section 43(a), a plaintiff must show actual damages rather than a mere tendency to be damaged"), *aff'd*, 229 F.3d 1139 (3d Cir. 2000) (unpublished table decision).

This affirmative evidence of consumer reliance is required even though a plaintiff need not provide "detailed individualization of loss of sales" at the summary judgment stage.[41] The rationale for this requirement is that the private right of action for false advertising under the Lanham Act was enacted "to promote fair business dealings, not to provide a windfall to an overly eager competitor."[42]

Here, Pitt's claims rely separately on Lundy Law's advertisements for workers' compensation cases and social security disability cases, and Pitt seeks monetary damages, disgorgement of profits, prospective corrective advertising costs, and injunctive relief.

### 1. Lundy Law's Workers' Compensation Advertisements

It is undisputed that Lundy Law has advertised for workers' compensation cases since at least 2008, and the record shows that at least some of Lundy Law's most recent workers' compensation advertisements represent that prospective clients would work with an attorney "at Lundy Law."[43] Pitt asserts that since as early as 2009, these advertisements have been literally false and misleading because Lundy Law has referred all, or essentially all, of its potential workers' compensation cases in Pennsylvania directly to LOLAC, and has received referral fees from LOLAC. Lundy maintains, however, that LOLAC's sole proprietor, Lenard Cohen, has been "of counsel" to Lundy since 2009, and Lundy could therefore truthfully advertise Mr. Cohen's legal services as those of an attorney at Lundy Law.[44]

---

[41] *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958); *Synygy*, 110 F. Supp. 3d at 622 (quoting *Gallup, Inc. v. Talentpoint, Inc.,* No. 00–5523, 2001 WL 1450592, at *13 (E.D. Pa. Nov. 13, 2001)).

[42] *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. 04-3623 (WHW), 2008 WL 1925304, at *10 (D.N.J. Apr. 30, 2008) (citing *Parkway Baking,* 255 F.2d at 649); *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 192 (2d Cir. 1980) ("Failure to prove actual damages in an injunction suit, as distinguished from an action for damages, poses no likelihood of a windfall for the plaintiff. The complaining competitor gains no more than that to which it is already entitled a market free of false advertising.").

[43] Stip. Facts ¶ 4; Pl.'s Exh. 19 at LUNDY-0000096. Both were aired between 2015 and 2016. Pl.'s Exhs. 15, 17.

[44] Pl.'s Reply at 8.

Lundy's position relies on the following facts, which Pitt has not disputed:

- In 2009, Mr. Cohen was added to Lundy Law's professional liability insurance as "Of Counsel" to the firm.[45]

- Mr. Cohen currently carries Lundy Law business cards, maintains a Lundy Law email address, appears on Lundy Law's website, and sometimes attends Lundy Law attorney meetings and marketing meetings.[46]

- Since September 2012, LOLAC has been located within the office space rented by Lundy Law.[47]

Pitt nonetheless contests Mr. Cohen's status as "Of Counsel" to Lundy. Specifically, Pitt cites to evidence that LOLAC remains an independent law firm in terms of ownership and control, that LOLAC maintains separate fax and telephone numbers from Lundy Law and pays rent to Lundy Law, that neither Mr. Cohen, LOLAC's associate, nor LOLAC's staff are W-2 employees of Lundy Law, and that Mr. Cohen does not identify himself as "of counsel" to Lundy Law on LOLAC's website, on the Pennsylvania Bar Association's listing of Workers' Compensation Lawyers, on social media, or in entering his appearances.[48]

The Court is not persuaded that any of this evidence from Pitt raises a genuine issue as to whether Lundy Law's workers' compensation advertisements are materially false or misleading. While the use of the label, "of counsel," is not dispositive of whether an attorney can be fairly advertised as an attorney of the firm (since there may be circumstances where the use of the title itself is meant to mislead), Pitt has not provided sufficient evidence to show that the nature of

---

[45] Def.'s Exh. 11.

[46] Stip. Fact ¶¶ 16, 19. Def.'s Exh. 29.

[47] Stip. Facts ¶ 17-18.

[48] Stip. Fact. ¶ 15; Pl.'s Opp. 8-9; Pl.'s Sur-Reply at 3-4 & n. 4.

Lenard Cohen's relationship with Lundy differed materially from a consumer's reasonable understanding of the relationship between a law firm and its attorneys. A potential workers' compensation client who contacted Lundy Law would meet with an attorney physically present in the office and would have recourse to Lundy Law's malpractice insurance for the attorney's conduct, if necessary. Pitt provides no argument for why an attorney's non-W-2 status within a law firm or his decision not to announce his relationship with the law firm in certain contexts means that he cannot be an attorney of the law firm. Nor has Lundy shown that the ownership of a separate law practice prevents Cohen from acting as an attorney at Lundy Law. More importantly, there is no indication that Lundy and Mr. Cohen adopted the "of counsel" title solely for this litigation because both the title and the relationship have existed since 2009.[49] Under these circumstances, Pitt has not met its burden of raising a genuine question of fact as to whether Mr. Cohen is an attorney at Lundy Law, or even if he is not, whether the particular differences between Lundy Law's relationship with Lenard Cohen and a law firm's relationship with its own attorneys would be material to potential clients. Accordingly, Pitt has not provided sufficient evidence to support its Lanham Act claim based on Lundy's workers' compensation advertisements.

### 2. Lundy Law's Social Security Advertisements

It is undisputed that Lundy Law has advertised for social security cases since at least November 2008.[50] Pitt asserts that all of Lundy Law's social security advertisements since then

---

[49] Pitt also contends that Mr. Cohen's individual relationship with Lundy Law is irrelevant because the referrals are to his firm rather than to him personally. But Pitt does not dispute that Mr. Cohen himself worked on workers' compensation cases referred to him by Lundy, such that if he were a Lundy Law attorney, these cases would be handled by an attorney at Lundy Law regardless of whether others at LOLAC also worked on these cases.

[50] Stip. Fact at ¶ 5.

have been literally false and misleading in light of the firm's referral agreements with the Fleschner, Pond, and Crumley law firms.

At the outset, the Court notes that Pitt has provided no affirmative evidence of consumer reactions to any of the specific messages and statements in Lundy Law's advertisements. There are no customer survey or client statements in the record demonstrating how potential clients actually interpreted Lundy Law's advertisements. Because such evidence is necessary to satisfy the "deception" prong of a false advertising claim in the absence of literal falsity, Pitt can only survive summary judgment with respect to claims that are literally false.[51]

In determining whether a claim is literally false, courts must consider only the "unambiguous" representations made by the defendant's advertisements and determine whether those representations conflict with reality.[52] In this case, the Court must determine 1) whether any of Lundy Law's advertisements unambiguously represents that the firm's own attorneys handle social security cases; and if so, 2) whether Lundy Law's own attorneys in fact handled social security cases at the time the advertisement was published.

Pitt generally asserts that any reference to social security disability services in Lundy Law's advertisements is literally false.[53] However, other than pointing generally to the entirety of Lundy's social security marketing materials, the only language that Pitt specifically identifies in its briefing as false is the term "Injury & Disability Lawyers" that Lundy used in conjunction

---

[51] *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994). Pitt also asserts that a court can also presume deception when there is an egregious intent to deceive. The Third Circuit has not yet determined whether to adopt such a presumption. *See id.* at 132 (citing *Johnson & Johnson-Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992)). Moreover, Pitt has not pointed to any evidence to establish that Lundy's use of any advertising that is not literally false is sufficiently egregious to justify the presumption.

[52] *Synygy*, 110 F. Supp. 3d at 621.

[53] Pl.'s Sur-Reply at 2.

with its mnemonic telephone number.[54]  Pitt asserts that the use of this descriptor falsely

represents that Lundy Law intends to provide legal services for social security disability cases.

The Court disagrees.  The use of the term "Injury & Disability Lawyers," without further

elaboration, is not necessarily a statement concerning the scope of Lundy Law's legal services.

For example, the term could be reasonably interpreted as identifying the law firm's intended

clientele, *i.e.* people with injuries or disabilities, without representing that the firm would be able

to handle all of their legal needs.  Accordingly, these general advertisements are not sufficiently

unambiguous to be construed as literally false.

However, as noted above, a small number of Lundy Law's advertisements do contain

more specific representations with respect to its attorneys' handling of social security cases.  For

example, in 2012 and 2013, Lundy aired two television commercials with the following

statements:

- Lundy Law gets you the social security benefits you deserve.
- We'll help you through the process.  ***That's what we do***.
- Our job is to get [people] the benefits after they've been denied.
  ***That's what we do***.
- Lundy Law simplifies the social security process.
- Lundy Law gets you the social security benefits you need.[55]

In addition, at least one paper advertisement that Lundy distributed to clients between 2012 and

2016 prominently listed "social security" as one of Lundy Law's "practice areas."[56]

While Lundy maintains that these advertisements do not "suggest that Lundy Law

employees will themselves handle the viewers' social security disability claims from beginning

to end," this argument misapprehends both the standard for literal falsity and the nature of the

---

[54] Pl.'s Sur-Reply at 4; Pl.'s Exhs. 14, 16.

[55] Pl.'s Exh. 19 at LUNDY-0000090, LUNDY-0000092.

[56] Pl.'s Exh. 14 at LUNDY-0000032; Pl.'s Exh. 17.

asserted misrepresentation.[57]  First, an advertisement need not be verbally explicit to be literally false, so long as a consumer would "unavoidably receive a false message from the advertising" "by necessary implication."[58]  In this case, when a law firm releases a commercial directed specifically at social security disability cases, and tells viewers that it will help them through the process of obtaining social security benefits because "that's what [they] do," such a message necessarily implies that lawyers within the law firm handle their clients' social security claims. Similarly, when a law firm lists "social security" among its "practice areas," it unambiguously implies that attorneys at the firm handle cases within that practice area.  Second, Lundy Law's advertisements need not assert that its attorneys handle *all* aspects of their clients' claims in order to be false.  If Pitt has provided evidence that Lundy Law's attorneys handled *no* aspect of their client's social security claims, then any advertisement that represents that Lundy Law's attorneys handled *any* portion of the claims process would be literally false.  Here, the Court concludes that the statements in at least the three advertisements discussed above are sufficiently specific and definitive to constitute unambiguous representations that Lundy Law's attorneys handle social security disability claims.[59]

Having concluded that some, but not all, of Pitt's advertisements for social security advertisements unambiguously represent that Lundy Law's attorneys handle social security claims, the Court considers whether this message "conflicts with reality."[60]  First, the parties

[57] Def.'s Reply at 11.

[58] *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharma. Co.,* 290 F.3d 578, 587 (3d Cir. 2002); *AstraZeneca LP v. Tap Pharm. Prod., Inc.*, 444 F. Supp. 2d 278, 296–97 (D. Del. 2006).

[59] It was Pitt's burden to identify each of the specific messages in Lundy's advertisements and explain why they should be construed as unambiguously and literally false.  Pitt did not do so in its briefing on this motion. Accordingly, the Court will not independently review and analyze each of the thousands of advertisements in the record to identify all of the advertisements that conveyed unambiguous messages concerning Lundy Law's handling of social security claims.

[60] *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 415 (E.D. Pa. 2016) (citing *Novartis*, 290 F.3d at 587).

have stipulated that between November 8, 2008 and October 31, 2013, Lundy Law referred all of its potential social security cases directly to other law firms.[61]  The text of Lundy Law's 2008 agreement with Fleschner expressly states that all work on the cases would be handled by Fleschner and that Lundy Law would have no obligations to any of these clients beyond referral of cases:

> [B]eginning the week of November 10, 2008, [Lundy Law] will refer all of its potential Social Security cases to [Fleschner], and [Fleschner] will do all of the investigation, management, processing, overseeing, preparation, and attend hearings as to any and all Social Security cases which are referred to [Fleschner] by [Lundy] and accepted by [Fleschner].
>
> . . .
>
> [Fleschner] and [Lundy Law] have agreed that both are responsible for the representation of their joint clients [*sic*] social security cases in accordance with this Memorandum of Understanding. Basically, [Lundy Law]'s obligation is to exclusively refer the potential [Lundy Law] Social Security cases to [Fleschner], and [Fleschner]'s obligation is to handle all other aspects of the [Lundy Law] Social Security Cases from investigation to conclusion.[62]

Lundy Law's 2011 agreement with Pond similarly states that Pond "shall be responsible solely at its own expense for evaluating, signing up and prosecuting each accepted Case."[63]  This evidence is sufficient for Pitt to establish that no attorney at Lundy Law handled social security claims between November 8, 2008 and October 31, 2013.  Accordingly, there is a genuine dispute of fact over whether at least three of Lundy Law's advertisements published during this time period were "literally false."

---

[61] Stip. Fact at ¶¶ 21-22.

[62] Pl.'s Exh. 48.

[63] Exh. 49 at 3, ¶5 (e).  The agreement does also provide that Pond would either provide Lundy with access to its case management system or provide period case status updates to Lundy to allow Lundy "to respond to a Lundy Law client inquiry." *Id*. at ¶ 10.

However, in November 2013, Lundy engaged a social security attorney, Michele Squires, to handle social security cases at Lundy. Because Plaintiff has not disputed that Ms. Squires was available and authorized to handle at least some social security cases at Lundy Law after November 2013, Lundy Law's advertisements for social security cases since then are not "literally false." While Pitt contends that Ms. Squires only handles a "*de minimis*" number of cases,[64] it has not shown that any of Lundy Law's advertisements since 2013 unambiguously represent that the firm would take on more than five cases per month. Moreover, Pitt's arguments that Ms. Squires is not an attorney at Lundy law because she is not a W-2 employee and does not receive benefits fails for the same reasons as discussed above with respect to Mr. Cohen. Thus Pitt's Lanham Act claims must be limited to advertisements prior to October 31, 2013.

The Court next considers what relief, if any, Pitt can obtain for Lundy Law's potentially false advertising between November 8, 2008 and October 31, 2013. With respect to money damages, as discussed above, Pitt must establish a causal link between its alleged injury and Lundy's specific misrepresentations by showing that Lundy's statements actually deceived and influenced consumers.[65] Here, in asserting consumer reliance on Pitt's misrepresentations, Pitt relies on 1) evidence that a substantial number of the social security clients were responding to Lundy Law's commercials, websites, and bus advertisements; and 2) evidence that Lundy Law's average monthly intakes of social security cases substantially increased in the years after the start of Lundy Law's referral agreement with Fleschner. Both are insufficient to satisfy Pitt's burden.

First, Pitt's evidence that potential clients responded to Lundy Law's advertisements does not support its conclusion that the clients relied on any of the specific false misrepresentations

---

[64] Pl.'s Opp. at 12.

[65] *Synygy*, 51 F. Supp. 2d at 575; *see also Synygy*, 110 F. Supp. 3d at 621-22.

made by Lundy. Pitt's argument is based on a spreadsheet of Lundy Law's social security intakes, which identifies only the category of advertising (e.g. television, website, Yellow Pages) to which the client was responding, not the content of the advertisement.[66] Thus, the spreadsheet does not show that clients were responding to Lundy Law's social security advertising rather than generic brand-building advertisements or advertisements directed solely at other categories of cases. Moreover, even if Pitt had evidence that clients were responding specifically to advertisements that referenced social security cases, that alone would not establish that Lundy Law's clients were influenced by any specific misrepresentations regarding those cases. Pitt has provided no surveys or consumer testimony that show clients would have responded differently to Lundy Law's advertisements if they omitted references to its social security practice or expressly disclosed that Lundy Law would refer rather than handle social security cases.

Second, while the analysis conducted by Pitt's expert, Michal A. Malkiewcz, shows that Lundy Law's monthly social security intakes was greater after the start of its referral agreement with Fleschner than before, there is no evidence linking the increase to the use of any specific advertisements, in particular any of the subset of advertisements that can be construed as literally false.[67] Moreover, even if Malkiewcz's analysis showed a temporal correlation between Lundy Law's social security intakes and the use of any of the potentially false advertisements, courts have held that "'inferences of causation based solely on the chronology of events, where the record contains . . . other equally credible theories of causation,' are not reasonable inferences."[68] Here, Malkiewcz's analysis does not account for the potential effect of Lundy Law's non-false advertising, such as the firm's more general "injury & disability lawyers" advertisements or its

---

[66] Exh. 56.

[67] Pl.'s Exh. 12 at 44-46.

[68] *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 487–88 (D.N.J. 2009) (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1388 (5th Cir. 1996)).

personal injury advertising. Thus, Pitt's evidence does not support a reasonable inference of causation, and the Court will grant summary judgment with respect to Pitt's request for money damages.[69]

For the same reasons, the Court will also grant summary judgment with respect to Pitt's request for disgorgement of profits and corrective advertising. The plaintiff bears the burden of showing that the sales for which it seeks disgorgement occurred because of the alleged false advertising.[70] Because Pitt has not established a causal link between the claimed misrepresentations and any clients or cases obtained by the firm, Pitt has not established that Lundy was unjustly enriched as a result of its false statements. Similarly, a court may only grant damages to pay for corrective advertising when such damages are "justifiable as 'a surrogate for plaintiff's damages or defendant's profit.'"[71] Plaintiffs seeking such corrective advertising damages usually must show some public confusion caused by the defendant's conduct that injures the plaintiff and is most cost-effectively corrected through remedial advertising.[72] Here, because Pitt has not established entitlement to disgorgement or money damages, corrective advertising cannot be justified as a surrogate for such recovery. Moreover, Pitt has not

---

[69] There are additional flaws with the causal chain between Lundy's misrepresentations and Pitt's alleged injuries. Even if Malkiewicz could establish that Lundy's false advertisements caused clients to engage Lundy Law for their cases, Malkiewicz does not rely on anything more than temporal correlation to connect Pitt's alleged losses to Lundy's gains. Pitt offers no direct evidence that any social security clients who chose Lundy Law would have instead chosen, or were aware of, Pitt's social security practice. Instead Malkiewicz's conclusion regarding Pitt's losses relies on the same before-and-after analysis used to support the asserted increase in Lundy Law's intakes. Pl.'s Exh. 12 at 44-49.

[70] *Bracco Diagnostics*, 627 F. Supp. 2d at 484; *see also Gucci Am. Inc. v. Duffy's Inc.,* 354 F.3d 228, 242 n. 15; *Castrol Inc. v. Pennzoil Quaker State Co.,* 169 F. Supp. 2d 332, 343 (D.N.J. 2001) ("Surely, Castrol must demonstrate with reasonable certainty the portion of Pennzoil's profits attributable to the willful and intentional false advertising before the Court can order disgorgement.").

[71] *Callaway Golf Co. v. Dunlop Slazenger*, 384 F. Supp. 2d 735, 741 (D. Del. 2005) (quoting *PBM Products, Inc. v. Mead Johnson & Co.,* 174 F. Supp. 2d 417, 420 (E.D. Va. 2001)).

[72] *Id*. at 740-41(citing *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 506, 509 (7th Cir.1992)).

sufficiently shown that it suffered any injury proximately caused by Lundy's misrepresentations that could be corrected through further advertising.

The final question is whether Pitt should be permitted to proceed to trial on its claim for injunctive relief only based on a rebuttal presumption of deception, materiality, and likelihood of injury. Courts have generally declined to grant injunctive relief when the "defendant ceases [the offending activity] and shows no inclination to repeat the offense."[73] Here, the Court has concluded that in light of Lundy Law's engagement with Ms. Squires, there is no evidence that Lundy Law's social security advertisements continue to be literally false. Although it is possible that Lundy may terminate this engagement with Ms. Squires in the future, and again farm out all its social security cases while representing to the public that its attorneys handle these cases, Pitt has not pointed to any evidence that Lundy intends to do so. Because Lundy has ceased its offending activity, and there is no evidence of an inclination to repeat the offense, there are no genuine disputes of fact that would support granting injunctive relief based on Lundy Law's allegedly false advertisements before November 2013. Accordingly, Lundy's Motion for Summary Judgment will be granted with respect to Plaintiff's Lanham Act claim in its entirety.

### B.    Pennsylvania Unfair Competition Law (Count Six)

Pennsylvania follows the Restatement (Third) of Unfair Competition, which provides that one business may be liable for harm to the commercial relations of another if:

> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
> (1) deceptive marketing, as specified in Chapter Two;
> (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;

---

[73] *Bracco*, 627 F. Supp. 2d at 493 (citing *Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 807 (D.C. Cir. 1987); *Robert Stigwood Group, Ltd. v. Hurwitz*, 462 F.2d 910, 913 (2d Cir.1972); *Lurzer v. American Showcase, Inc.*, 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998)).

> (3) appropriation of intangible trade values including trade secrets and the right of
> publicity, as specified in Chapter Four;
> or from other acts or practices of the actor determined to be actionable as an unfair
> method of competition, taking into account the nature of the conduct and its likely effect
> on both the person seeking relief and the public; or
> (b) the acts or practices of the actor are actionable by the other under federal or state
> statutes, international agreements, or general principles of common law apart from those
> considered in this Restatement.[74]

Here, Plaintiffs have alleged unfair competition based on deceptive marketing and
misappropriation of trade secrets.

First, because the parties agree that the definition of "deceptive marketing" under Section
2 of the Restatement (Third) of Unfair Competition is nearly identical to the Lanham Act, and
because both Pitt and Lundy rely on the same arguments and facts with respect to both claims,
Lundy's motion for summary judgment will be granted with respect to Pitt's state law deceptive
marketing claim for the reasons discussed above with respect to Pitt's Lanham Act claim.[75]

Second, Plaintiff's unfair competition claim based on trade secret misappropriation is
based solely on information provided by Sara Lundy to Lundy Law concerning advertisements
used by Pitt and other law firms.[76] Here, the parties have stipulated that Sara Lundy provided
Lundy Law with information regarding the names of law firms with advertisements running
through Titan, photographs of advertisements by law firms appearing in public, and information
on where law firm advertisements ran publicly and the types of advertisements that ran in public
at certain points in time in certain locations.[77] Pitt also points to a particular email thread in
which Leonard Lundy informs his daughter, Sara Lundy, that he intends to file suit against Pitt

---

[74] Restatement (Third) of Unfair Competition §1.

[75] *Diadato v. Wells Fargo Ins. Servs.,* 44 F. Supp. 3d 541, 571-72 (M.D. Pa. 2014) (holding that
Pennsylvania common law claim for unfair competition through deceptive marketing is "identical to the Lanham
Act without the federal requirement of interstate commerce").

[76] Pl.'s Opp. at 23.

[77] Stip. Fact ¶¶ 45-46.

over its "Remember this Number" slogan and asks her for the location of Pitt's advertisements and "pictures or copies of [Pitt's] ads and copies or pictures of [Lundy Law's] [a]ds."[78]  Sara Lundy responds that Pitt "has ads inside buses, subways" and "on the platforms of subway stops" and agrees to provide photos of Pitt's and Lundy Law's advertisements.[79]

However, while the nepotistic interactions between Leonard and Sara Lundy may be concerning for Titan and SEPTA, Pitt has not established that any of the information exchanged between Titan and Lundy was confidential.  There is no evidence that Titan provided Lundy with copies of any internal advertising strategy documents, unpublished draft advertisements, or extensive compilations of advertising data that might reasonably carry an expectation of confidentiality.  Nor has Pitt identified any confidentiality agreements between Titan and any law firm that prohibited Titan from sharing the locations or photographs of law firms' advertisements with other Titan customers.  Rather, the content and location of a law firm's advertisements is generally intended to be public, and indeed, it is uncontested that Pitt was able to obtain similar information from Titan concerning the locations of Lundy Law's advertisements.[80]  Accordingly, Pitt has failed to meet its burden in providing any evidence of unfair competition through trade secret misappropriation, and summary judgment will be granted on Count Six in its entirety.

### C.     Dragonetti Act Claim (Count Eight)

Pennsylvania's Dragonetti Act allows a civil suit for wrongful initiation of civil court proceedings without probable cause and for a purpose other than securing adjudication of a legal

---

[78] Pl.'s Exh. 84.  *See also* Pl.'s Exhs. 85-86.

[79] Pl.'s Exh. 84.

[80] Stip Fact ¶ 47.

claim, when the proceedings end in favor of the defendant.[81]  Accordingly, a plaintiff can

succeed on a claim under the Dragonetti Act if it shows (1) that the underlying proceedings were

terminated in plaintiff's favor; (2) that the defendant caused those proceedings to be instituted

without probable cause; and (3) that the proceedings were instituted for an improper purpose.[82]

Here, Lundy argues, as it did in its earlier motion to dismiss Pitt's Dragonetti claim, that

Lundy Law's voluntary dismissal of its trademark suit without prejudice was not a termination in

Pitt's favor.  In denying Lundy Law's first motion to dismiss, the Court held that the question of

whether Pitt's voluntary dismissal constituted a favorable termination would depend on the

specific factual circumstances of the case, and evidence that Lundy anticipated an imminent loss

on the parties' pending motion for preliminary injunction may support a finding that the

voluntary dismissal was in Pitt's favor. [83]

Since then, however, Pitt has come forward with no evidence that Lundy withdrew its

suit "in the face of imminent defeat" or that the dismissal was otherwise based on the merits of

the suit.[84]  The only evidence Pitt relies on for its claim are 1) that Lundy dismissed the day

after it learned that Pitt was being indemnified by its insurance carrier for its defense of the suit;

and 2) that Leonard Lundy, during his deposition as the corporate designee of Lundy Law in this

case, could not identify the specific individuals who told him they were confused by Pitt's use of

its "Remember This Name" slogan.  This does not satisfy Pitt's burden.  First, even if one could

infer from the timing of Lundy Law's withdrawal of its suit that its decision was based on Pitt's

---

[81] *See* 42 Pa. C.S. § 8351-55.

[82] *Paparo v. United Parcel Serv.*, 43 F. Supp. 2d 547, 548 (E.D. Pa. 1999) (citing *Bannar v. Miller*, 701 A.2d 232, 238 (Pa. Super. 1997)).

[83] Mem. Op. dated December 13, 2013 (Doc. No. 35) at 15.

[84] *Zappala v. Eckert Seamans Cherin & Mellott, LLC*, No. 0336, 2011 WL 8200380 (Phil. Ct. Com. Pl. September 20, 2011), *aff'd*, 53 A. 3d 936 (Pa. Super. 2012); *Contemporary Motorcar Ltd v. MacDonald Illig Jones & Britton, LLP*, No. 783 WDA 2012, 2013 WL 11253857, at *4 (Pa. Super. Ct. Sept. 19, 2013) (citing *Majorsky v. Douglas*, 58 A.3d 1138 (Pa. Super. Ct. 2012)).

financial ability to fully litigate the case, the mere desire to avoid protracted litigation is not proof of anticipated defeat.  Moreover, Pitt does not dispute that both parties are still actively litigating Lundy Law's attempt to obtain registration for its "Remember this Name" slogan before the Trademark Trial and Appeals Board.[85]  Thus, Lundy Law's decision to dismiss its suit without prejudice after learning that Pitt was insured does not establish that the dismissal was in Pitt's favor.  Second, the mere fact that Lundy could not identify specific witnesses who would testify regarding their confusion over Pitt's "Remember this Number" slogan does not show that the case was instituted without probable cause.  Indeed, a plaintiff asserting trademark infringement can prove likelihood of confusion without any evidence of actual confusion.[86]  Accordingly, Pitt has not satisfied its burden of establishing that Lundy Law's suit was terminated in its favor, and Lundy's Motion for Summary Judgment is granted with respect to Pitt's Dragonetti Act claim.

## IV. CONCLUSION

For the reasons discussed above, Lundy's motion for summary judgment will be granted as to all remaining claims.  The Court is aware that its decision today denies a plaintiff relief despite evidence of years of wrong-doing by the defendants.  There is every indication here that a prominent personal injury law firm in Philadelphia essentially rented out its name in exchange for referral fees and that its managing partner lied on television that his firm handled social security disability claims when it did not.  But when a plaintiff fails to meet its burden of establishing causation of harm or likelihood of future violations, the Lanham Act and

---

[85] *See Larry Pitt & Associates, P.C. v. Lundy Law, LLP*, Opposition No. 91210158 (T.T.A.B.).

[86] *See Express Servs., Inc. v. Careers Exp. Staffing Servs.*, 176 F.3d 183, 187 (3d Cir. 1999) (reversing and remanding district court's determination that plaintiff failed to demonstrate likelihood of confusion when the parties had stipulated there was no actual confusion).

Pennsylvania law do not permit a court to grant relief based solely on a defendant's past misrepresentations. Nonetheless, courts are not the only institutions to review deceptive attorney advertising; nor are they typically the most appropriate or efficient forum. In many instances, a complaint to the state attorney disciplinary boards may be the most effective means for quickly ending and sanctioning plainly unethical conduct. Thus the Court's decision should not be read to condone or excuse Defendants' alleged actions, but should instead serve as a reminder of the burden that plaintiffs bear when they choose to seek relief against their competitors in court.

An order follows.